Maurice CROMMIE, Plaintiff,

v.

STATE OF CALIFORNIA, PUBLIC UTILITIES COMMISSION, et al. Defendants.

Arthur A. MANGOLD, Plaintiff,

v.

STATE OF CALIFORNIA, PUBLIC UTILITIES COMMISSION, et al. Defendants.

Nos. C 89–4433 BAC, C 90–1150 BAC.

United States District Court, N.D. California.

Jan. 5, 1994.

alternative theories of liability: the federal Age Discrimination in Employment Act ("ADEA") and the California Fair Employment and Housing Act ("FEHA"). Based on the jury's findings, plaintiffs now seek attorneys' fees and costs under state law as provided in Cal.Gov't Code § 12965(b) and under the private attorney general theory provided for in Cal.Code Civ.P § 1021.5. Judgment is ENTERED IN FAVOR OF PLAINTIFFS; plaintiffs' motion for attorneys' fees is GRANTED in part.

### A. State Law Determines Entitlement to Attorney's Fees

Under the doctrine of pendant jurisdiction, this court retained and decided plaintiffs' state law claims of discrimination under the FEHA along with a federal claim of discrimination. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). Pendant jurisdiction exists when there are sufficiently substantial federal claims to confer jurisdiction on the court in the first instance, and federal claims share a "common nucleus of operative facts." *Id.* at 725, 86 S.Ct. at 1138, *Bouman v. Block,* 940 F.2d 1211, 1230 (9th Cir.1991).

When a federal court has pendant jurisdiction over the plaintiff's state law discrimination claim, state substantive law governs the merits of that claim. *See Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *Ackerman v. Western Elec. Co., Inc.,* 643 F.Supp. 836, 857 (N.D.Cal.1986), *aff'd,* 860 F.2d 1514, 1520 (9th Cir.1988); 3A J. Moore & J. Lucas, *Moore's Federal Practice,* ¶ 18.04[5] at 18–63 (2d ed. 1986); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 3561.1 at 145 (2d ed 1984). Whether a plaintiff is entitled to an award of attorneys' fees is a question of substantive law and therefore is governed by state law. *Kabatoff v. Safeco Ins. Co.,* 627 F.2d 207, 210 (9th Cir.1980); *Schulz v. Lamb,* 591 F.2d 1268, 1272 (9th Cir.1978); *Michael–Regan Co., Inc. v. Lindell,* 527 F.2d 653, 656 (9th Cir.1975); *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; and *Maternally Yours, Inc. v. Your Maternity*

Richard Rogers, Mayo & Rogers, Madeleine Tress, San Francisco, CA, for plaintiffs.

Ephraim Margolin, Arthur Brunwasser, San Francisco, CA, for defendants.

### ORDER

CAULFIELD, District Judge.

### INTRODUCTION

Plaintiffs in these actions prevailed at trial on their age discrimination claims under two

*Shop, Inc.,* 234 F.2d 538, 540 n. 1 (2d Cir. 1956).

■ In an effort to persuade the court to apply federal law in awarding attorneys' fees, defendant advances the novel argument that plaintiffs only prevailed on their federal claims and thus only availed themselves of federal remedies. In general terms, defendant suggests that the jury instructions were based on the mixed-motive test, which is necessarily federal law and therefore inconsistent with an award of attorneys' fees under state law.

■ Defendant's argument misstates disparate treatment theory under California law. "California courts have relied on federal law to interpret the [FEHA]." *Harris v. Hughes Aircraft,* 19 Cal.App.4th 129, 23 Cal. Rptr.2d 343, 349 (1993), citing *Mixon v. Fair Employment & Housing Commission,* 192 Cal.App.3d 1306, 1316–17, 237 Cal.Rptr. 884 (1987). Under California law, a plaintiff must prove intentional discrimination to prevail under disparate treatment theory. *Id.* Plaintiff may prove discriminatory intent in one of two ways. A plaintiff can establish through direct evidence that the unlawful discrimination was a motivating factor in the adverse employment decision (the so-called "mixed-motive" test under *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Alternatively, when direct evidence is not available, the plaintiff can use the *McDonnell Douglas* model, which allows a plaintiff to proceed in his or her case with a prima facie showing of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Mixon,* 192 Cal.App.3d at 890, 237 Cal.Rptr. 884. The *Price Waterhouse* test is not a lower standard for proving discriminatory intent nor is it an exclusively federal test. Plaintiffs prevailed at trial on their state law discrimination claims and state law governs the decision of whether to award attorneys' fees.

■■ The court now turns to the question of whether plaintiffs in the instant action are entitled to attorneys' fees under California law. Plaintiffs invoke two provisions under California law that allow prevailing plaintiffs to recover attorneys' fees. First, plaintiffs request an award of attorneys' fees under Cal.C.Civ.P. § 1021.5, which provides in pertinent part that "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest...." This provision, also known as the private attorney general theory, is designed to encourage the presentation of meritorious claims affecting large numbers of people by compensating successful litigants with attorneys' fees incurred in public interest litigation. *Serrano v. Priest,* 20 Cal.3d 25, 44–48, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977) (*Serrano III*). To determine whether an award is appropriate, the trial court must evaluate the following factors: (1) whether a right of societal importance was involved, (2) whether a sizable class has been benefitted by the litigation, (3) whether the necessity and financial burden of private enforcement are such as to make the award appropriate, and (4) whether in the interest of justice, such fees should not be paid out of the recovery. *See* Cal.Code Civ.Proc. § 1021.5; *Los Angeles Police Protective League v. City of Los Angeles,* 188 Cal. App.3d 1, 232 Cal.Rptr. 697 (1986); *see also Marini v. Municipal Court,* 99 Cal.App.3d 829, 160 Cal.Rptr. 465 (1979).

■ Plaintiffs are entitled to an award of attorneys' fees under these standards. By prevailing in their age discrimination suit against the Public Utilities Commission ("PUC"), plaintiffs vindicated an important right—the right to be free from invidious discrimination. The litigation necessarily conferred a significant benefit on society as a whole as well as on the direct victims of age discrimination,[1] and will deter the PUC and other governmental agencies from undertaking similar discriminatory activities in the future. Moreover, the financial burden on plaintiffs caused by their private enforcement

---

1. The *amici* brief represents the interests of an array of potential plaintiffs who could benefit from the outcome of this litigation.

of their rights makes the award appropriate.[2] Accordingly, the court finds that plaintiffs are entitled to an award of attorneys' fees under Cal.C.Civ.P. § 1021.5.

■ Alternatively, plaintiffs are entitled to an award of attorneys' fees under Cal.Gov't Code § 12965(b). Cal.Gov't Code § 12965(b) states that "[i]n actions brought under this section, the court, in its discretion may award to the prevailing party reasonable attorney fees and costs . . . ." For the reasons stated above, the court finds that plaintiffs are also entitled to attorneys' fees under Cal.Gov't Code § 12965(b).

### B. *Law Governing Award Calculation*

The next question in this analysis is whether state or federal law applies to the computation of fees to which the plaintiffs are entitled. "The awarding of attorneys' fees by a federal court in the exercise of pendent jurisdiction raises an *Erie* issue: is the method of computing fees substantive, so that state law applies, or procedural so that federal law applies?" *Ackerman v. Western Elec. Co., Inc.*, 643 F.Supp. 836, 858 (N.D.Cal.1986) *aff'd*, 860 F.2d 1514, 1520 (9th Cir.1988), citing *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Ninth Circuit has not explicitly resolved this issue, *Ackerman*, 643 F.Supp. at 858, but has consistently upheld the application of state law. *See Hancock Laboratories, Inc. v. Admiral Insurance Co.*, 777 F.2d 520, 525–26 (9th Cir.1985) (Reed, J., sitting by designation); *Diamond v. John Martin Co.*, 753 F.2d 1465, 1466–68 (9th Cir.1985).

*Ackerman* is the only case that explicitly frames the question. The court did not reach a definitive answer about whether the calculation of attorneys' fees is governed by state or federal law because at the time "there [was] no significant difference between state and federal law governing the determination computation [sic] of fees in [that] case" and the "federal statute authorizing awards [was] closely analogous to the California [FEHA provisions]." *Id.* at 861.

Since *Ackerman* was decided, however, the availability of a contingency enhancement under federal law has changed. In *City of Burlington v. Dague*, the United States Supreme Court concluded that under the typical federal fee shifting statute, contingency enhancements are no longer available. —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). On the other hand, under California state law contingency enhancements are still available. *See Serrano III*, 20 Cal.3d at 49, 141 Cal.Rptr. 315, 569 P.2d 1303. Consequently, there is now a significant difference between state and federal law governing fees computation.

Given the current discrepancy between state and federal law on the issue of fee computation, the need for an explicit answer to the question of which law governs fee computation is manifest.

In *Shakey's Inc. v. Covalt*, 704 F.2d 426, 435–36 (9th Cir.1983), the Ninth Circuit Court of Appeals stated that the trial court's "decision to hold an evidentiary hearing when making an attorneys' fee award is a matter of procedure, and is therefore governed by federal law under the *Erie* doctrine." *Shakey's*, 704 F.2d at 435. Later the *Shakey's* court stated that the district court's ruling survived review under either the abuse of discretion standard if federal law applied or the clearly erroneous standard if

---

**2.** Defendant argues that Ms. Tress should be denied any award of attorneys' fees because neither plaintiffs nor Mr. Rogers are directly obligated under Ms. Tress's contract to pay her fees out of the recovery. This argument misconstrues the private attorney general doctrine and was explicitly rejected by the California Supreme Court. Plaintiffs' eligibility for attorneys' fees is not affected by the fact that they are under no obligation to pay fees. *See Serrano III*, 20 Cal.3d at 47, 141 Cal.Rptr. 315, 569 P.2d 1303 (holding that denying benefits of the private attorney general rule to funded public-interest attorneys would be essentially inconsistent with the rule

itself). The private attorney general doctrine rests on the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies and without some mechanism authorizing the award of attorneys' fees they would be infeasible as a practical matter. *Sokolow v. County of San Mateo*, 213 Cal.App.3d 231, 261 Cal.Rptr. 520 (1st Dist. 1989). In other words, without the possibility of an award of fees under the private attorney general theory, plaintiff's would not have been able to enjoy the benefits of Ms. Tress's assistance at trial.

state law applied. Based on these statements, the *Ackerman* court concluded that the *Shakey's* opinion "appears to hold that under the Erie doctrine federal law governs the determination of the amount of attorneys' fees to be awarded by a federal court pursuant to state law." *Id.* at 858.

The conclusion of the court in *Ackerman* equates the question of which law governs the decision to hold an evidentiary hearing to establish the factual basis for attorneys' fees, with the question of which law governs the substantive evaluation of the facts established at the hearing. These are distinct questions.

■ This court interprets *Shakey's* to hold that federal law governs the decision to hold an evidentiary hearing on the issue of attorneys' fees and state law governs the award of attorneys' fees in diversity actions.[3]

The court in *Shakey's* upheld the district court's application of state law and in so doing cited *Kabatoff v. Safeco Insurance Co.*, 627 F.2d 207 (9th Cir.1980) (upholding district court's application of state law factors for determining what constitutes reasonable attorneys' fees). This court is unpersuaded that the Ninth Circuit court would cite *Kabatoff* if its ultimate holding in *Shakey's* was that federal law governs calculation of attorneys' fees.

This interpretation of *Shakey's* is also supported by other recent Ninth Circuit opinions that have applied state law to fee calculations. *See Bouman v. Block*, 940 F.2d 1211 (9th Cir.1991). In *Bouman*, the plaintiff brought a sex discrimination suit in federal court alleging violations of Title VII, 42 U.S.C. § 1983, and the California Government Code. *Id.* at 1217. The court exercised pendent jurisdiction over the state law claims, *id.* at 1230, and plaintiff prevailed at trial on her federal and state claims. *Id.* at 1237.

Plaintiff then moved pursuant to California state law for an order requiring defendant to reimburse her expert witness costs. At the time of the court's decision, Title VII had no provision for awarding costs, and under other federal law, the amount of costs were limited to $30.00 per day. *Id.* Nevertheless, the Ninth Circuit reasoned that "[w]hen a plaintiff proceeds under multiple theories and prevails on her FEPA claims, she is entitled to attorneys' fees under FEPA." *Id.* The court then concluded that since California law provided "an independent state ground for awarding costs," the district court's award, which exceeded the federal law limit of $30.00 per day, was proper. *Id. Bouman* demonstrates the Ninth Circuit's consistent application of state law to calculation of attorneys' fees and costs. Accordingly, the court finds that state law applies to the calculation of attorneys' fees.

## C. The Fee Calculation

■ The court now turns to calculation of attorneys' fees for plaintiffs in the instant action. To determine the appropriate attorneys' fees, the court must calculate the lodestar, which is the product of the number of hours reasonably expended and a reasonable hourly rate.

### 1. The Lodestar
#### a. Hours Reasonably Expended

The first step in the calculation of the lodestar is determining the number of hours reasonably expended in the litigation. As the *Serrano III* court stated, "anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity...." *Serrano III*, 20 Cal.3d at 48 n. 23, 141 Cal.Rptr. 315, 569 P.2d 1303.

Both Mr. Rogers and Ms. Tress submitted documentation detailing daily the hours they spent preparing for and litigating the instant actions. Defendants do not challenge the number of hours reported by plaintiffs' attorneys, with the exception of the 2.20 hours on March 26, 1993, which were devoted to a press conference. Accordingly, based on Mr.

---

**3.** The district court had denied an award on attorneys' fees on the federal trademark claim and had awarded fees under an Oregon statute for breach of the franchise agreement. Defendants argued on appeal that the trial court failed to hold an evidentiary hearing to determine the *Kerr* factors, which are federal law. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1976).

Rogers' detailed time record attached to his declaration, the court finds that he reasonably expended 981.00 hours (calculated from the 983.20 hours claimed minus the 2.20 hours expended on the March 26 press conference) on the present action as of April 16, 1993. Based on the time sheet descriptions attached to Ms. Tress' declaration, the court finds that Ms. Tress reasonably expended a total of 203.50 hours preparing for and litigating this matter as of March 22, 1993.

### b. *Reasonable Hourly Rates*

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise and the nature of the work preformed. *See Serrano III,* 20 Cal.3d at 48–49, 141 Cal.Rptr. 315, 569 P.2d 1303; *Mandel v. Lackner,* 92 Cal.App.3d 747, 761, 155 Cal.Rptr. 269, 278 (1979). The court may consider the applicants' customary billing rates and the prevailing rate charged by attorneys of similar skill and experience for comparable legal services in the community. *Mandel,* 92 Cal. App.3d at 761–62, 155 Cal.Rptr. 269; *DFEH v. Cairo* FECH Dec. No. 84-04 at 25 (1984).

Mr. Rogers has requested a rate of $300.00 per hour. Defendant contends that a reasonable rate for Mr. Rogers is not more than $200.00 per hour. Mr. Rogers graduated from law school in 1969 and has been a member of the California State Bar since 1970. He demonstrated skill in handling the complicated issues in the case and in responding to the defense counsel's often odious tactics. Mr. Rogers has demonstrated that the market rate for an attorney with his experience is more than $200.00 per hour and that his hourly rate for an age discrimination claim, like the case at bar, would be $400.00. The court finds that $300.00 per hour is a reasonable rate for Mr. Rogers.

Ms. Tress has requested $285.00 per hour; defendant claims she should be denied any award of attorneys' fees. As discussed above, defendant's argument is without merit and Ms. Tress is entitled to an award of attorneys' fees. Ms. Tress has been a member of the California State Bar since 1977 and has had significant litigation experience, particularly in the area of employment law.

Ms. Tress began her involvement in the case shortly before trial and assisted Mr. Rogers in witness and exhibit preparation. In light of Ms. Tress's trial assistance which the court observed and her experience, the court finds that a reasonable rate for Ms. Tress's services is $120.00 per hour.

### 2. *Calculation of the Lodestar*

The lodestar is the product of reasonable hours and reasonable rate, and represents an objective basis for an initial determination of an award of attorneys' fees. For 981 hours at the rate of $300.00 per hour, Mr. Rogers is entitled to a fee award of $294,300.00. For 203.5 hours at the rate of $120.00 per hour, Ms. Tress is entitled to $24,420.00. Combining Mr. Rogers' $294,300.00 with Ms. Tress' $24,420.00, the total lodestar figure amounts to $318,720.00.

### 3. *The Multiplier*

Under California fee-shifting provisions, a multiplier may be awarded after consideration of a number of factors, including:

(1) the novelty and difficulty of the questions involved; and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded the employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view establishing eligibility for an award. . . .

*Serrano III,* 20 Cal.3d at 49, 141 Cal.Rptr. 315, 569 P.2d 1303; *Serrano v. Unruh,* 32 Cal.3d 621, 625 n. 6, 186 Cal.Rptr. 754, 652 P.2d 985 (1982) (*Serrano IV*); *Maria P. v. Riles,* 43 Cal.3d 1281, 1294 n. 8, 240 Cal.Rptr. 872, 743 P.2d 932 (1987). The purpose of contingent risk inquiry is to determine a fee that is likely to entice competent counsel to undertake difficult public interest cases. *San Bernardino Valley Audubon Society v. County of San Bernardino,* 155 Cal.App.3d 738, 755, 202 Cal.Rptr. 423 (1984). *See also Beasley v. Wells Fargo Bank,* 235 Cal.App.3d 1407, 1419, 1 Cal.Rptr.2d 459 (1991) (purpose of contingent risk multipliers is to attract attorneys to cases of significant societal importance and "to compensate for the *risk* of

loss generally in contingent cases *as a class*").

Both Mr. Rogers and Ms. Tress undertook representation of plaintiffs on a contingency basis and prevailed after a protracted and complicated 3–week trial. This court finds the result exceptional in light of defense counsel's excessively vexatious and often unreasonable opposition to plaintiffs' counsel which the court observed during trial and during discovery conferences and motion arguments. The court is also persuaded to award a multiplier (1) based on the difficulties inherent in preparing and prevailing in age discrimination claims where statistical evidence was difficult to assemble and analyze, and (2) where anecdotal evidence was critical to the presentation of the case. These cases included technical analysis and explanation to the jury of four tests for promotion over a period of years. These cases also included significant public interest value because the plaintiffs claimed that a public agency (the California PUC) had systematically engaged in age discrimination in the design and use of promotion examinations and interviews. There is an impact of the verdict on similarly situated employees of the California PUC. Due to the difficulty of the litigation, the success on the merits, and public interest value, the court finds that plaintiffs' counsel are entitled to a multiplier of 2.0.

## CONCLUSION

1. Judgment is ENTERED IN FAVOR OF PLAINTIFFS.

2. It is ORDERED AND ADJUDGED:

a. that plaintiff Maurice F. Crommie recover from defendants California Public Utilities Commission, William Ahern, and Catherine Yap, $88,460.00, with interest thereon at ten percent commencing March 17, 1993, and his costs of suit;

b. that plaintiff Maurice F. Crommie recover from defendant California Public Utilities Commission an additional $63,460.00 liquidated damages, with interest thereon at ten percent commencing March 17, 1993;

c. that plaintiff Arthur A. Mangold recover from defendants California Public Utilities Commission, Jeff O'Donnell, and Ed Texeira, $98,590.00, with interest thereon at ten percent commencing March 17, 1993, and his costs of suit;

d. that plaintiff Arthur A. Mangold recover from defendant California Public Utilities Commission an additional $65,462.00 liquidated damages, with interest thereon at ten percent commencing March 17, 1993;

e. that the salary increases consequent upon the appointments ordered shall be effective March 17, 1993; and

f. that plaintiffs are awarded costs of suit in the amount of $13,991.42.

3. Plaintiffs are awarded attorneys' fees in the amount of $318,720.00: $294,300.00 for Mr. Rogers' services and $24,420.00 for Ms. Tress' services.

4. Based upon a multiplier of 2, Mr. Rogers is awarded fees of $588,600.00 and Ms. Tress is awarded fees of $48,840.00.

5. Defendant California Public Utilities Commission shall forthwith appoint plaintiff Maurice F. Crommie to a position in the PURA V classification retroactive and to be effective June 1, 1992, and shall forthwith appoint plaintiff Arthur A. Mangold to a position in the Program and Project Supervision classification retroactive and to be effective April 1, 1987, and by these appointments plaintiffs shall be entitled to all Public Employees' Retirement System ("PERS") benefits and seniority rights as of the retroactive date of appointment. For purposes of establishing plaintiffs' retirement benefits and seniority rights as herein provided, each plaintiff shall pay the normal employee's PERS contribution for the period beginning with the date of retroactive appointment to the date of actual appointment, and defendant California Public Utilities Commission shall pay the employer's normal PERS contribution for the same period.

6. All calculations of retirement benefits, salary increases and interest under this order shall be presented to plaintiffs' counsel within fifteen (15) days of the date of the order. Plaintiffs' counsel shall bring to the attention of the court all disagreements in

calculations within thirty (30) days of the date of this order.

7. The court retains jurisdiction over this case in order to enforce this order.

IT IS SO ORDERED.