[No. A076872. First Dist., Div. One. Feb. 11, 1998.]

LESLIE M. FLANNERY, Plaintiff and Respondent, v.
CALIFORNIA HIGHWAY PATROL et al., Defendants and Appellants.

630

COUNSEL

Daniel E. Lungren, Attorney General, Tyler B. Pon and Lisa A. Tillman, Deputy Attorneys General, for Defendants and Appellants.

Amitai Schwartz, Dennis M. Farias, Prentice & Scott, John Houston Scott and John F. Prentice for Plaintiff and Respondent.

## OPINION

**STRANKMAN, P. J.**—The principal question in this appeal is whether a California court must apply standards applicable to federal fee-shifting statutes when it awards reasonable attorney fees to a prevailing plaintiff in an action under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA). We conclude that California law, not federal law, applies. Nevertheless, we also conclude that the order awarding fees in this case must be reversed and remanded for reconsideration of the amount of the award.

### Factual and Procedural Background

Plaintiff Leslie M. Flannery was terminated from her employment as a California Highway Patrol (CHP) traffic officer in 1993. She sued the CHP and others, alleging harassment and wrongful termination in violation of the FEHA, because of gender-based discrimination or in retaliation for an earlier discrimination claim. She sought reinstatement and damages.

After a lengthy trial, the jury returned a general verdict awarding plaintiff $250,000. The judgment entered upon that verdict also included orders granting injunctive relief as to plaintiff's personnel file and status as a CHP officer.

Plaintiff moved for attorney fees and expenses pursuant to two separate statutory provisions, Government Code section 12965, subdivision (b), which is part of the FEHA, and Code of Civil Procedure section 1021.5 (section 1021.5). The trial court awarded plaintiff $1,088,231 in fees and expenses.

In a written order explaining its reasoning, the court began by finding that plaintiff was entitled to fees under the FEHA. Next, it determined a lodestar based on the hours reasonably spent on the case and a reasonable hourly rate. To establish that reasonable hourly rate, it considered the skill and experience of the attorneys, the nature of the work performed, the relevant area of

expertise, their customary billing rates, and the prevailing rate charged by attorneys of similar skill and experience with comparable legal services in the community. The court then concluded that plaintiff was entitled to a multiplier of the lodestar under the FEHA, because the action resulted in enforcement of important rights affecting the public interest, a significant benefit had been conferred on the general public or a large class of persons, the necessity and financial burden of private enforcement were such to make the award appropriate, and the fees should not be paid out of the recovery.[1] Next, the court found that plaintiff also was entitled to fees under section 1021.5. Although it specifically noted that plaintiff had no difficulty in procuring counsel to represent her in this action, it concluded that her fees under that statute should be enhanced for several reasons, including the contingent nature of the case, the complexity of the contested issues of fact, the high level of skill displayed by plaintiff's attorneys, the "extraordinary" result given the obstacles faced by plaintiff's attorneys, the amount of time involved, and the delay in receiving compensation.

The court awarded $504,075 as the lodestar amount, multiplied by two, totaling $1,008,150 in enhanced fees for work on the merits of the lawsuit. The rest of the award included expenses and the attorney fees for work on the fee motion itself. Defendant has appealed, arguing that plaintiff was not entitled to fees under section 1021.5 and that the court erred in applying a multiplier to calculate the award of fees under the FEHA.[2]

## Section 1021.5

Code of Civil Procedure section 1021 is the Legislature's affirmation of the "American rule," which provides that each party to a lawsuit must ordinarily pay his or her own attorney fees. (*Trope* v. *Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259].) That statute provides in pertinent part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties. . . ." (Code Civ. Proc., § 1021.) The Legislature has enacted dozens of statutory exceptions to the American rule, including those at issue in this case, section 1021.5 and

[1] As we will discuss, these factors are the statutory requirements for entitlement to an award of fees under section 1021.5, not the criteria for determining the amount of an award.

[2] Apparently a dispute has arisen between plaintiff and the attorneys who represented her in the trial court. After briefing was completed in this appeal, plaintiff filed a motion in this court to substitute new counsel as her attorney of record. The motion was opposed by her trial counsel. We granted the motion but indicated that we would permit counsel from the Law Offices of Amitai Schwartz to appear at oral argument as amicus curiae, sharing the time allotted to plaintiff. But the issues involved in this dispute between plaintiff and her former counsel are not before us in this appeal.

Government Code section 12965, subdivision (b).[3] (See Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 1997) § 5.1, p. 5-2 & Chart: Selected California Fee-Shifting Statutes; 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, §§ 190-201, pp. 715-733.) We first consider plaintiff's entitlement to fees under section 1021.5. As plaintiff points out, if the award can be affirmed based on that statute, we need not analyze its validity under the FEHA.

Section 1021.5 codifies the "private attorney general" doctrine of attorney fees articulated in *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*) and other judicial decisions. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].) That statute permits a trial court to award fees to a successful party in any action that "has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5.)

Underlying the private attorney general doctrine is the recognition that privately initiated lawsuits often are essential to effectuate fundamental public policies embodied in constitutional or statutory provisions, and that without some mechanism authorizing a fee award, such private actions often will as a practical matter be infeasible. The basic objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases. (*Maria P.* v. *Riles* (1987) 43 Cal.3d 1281, 1289 [240 Cal.Rptr. 872, 743 P.2d 932].)

Whether to award fees under this statute is a matter within the trial court's discretion and will not be disturbed on appeal absent a showing of abuse of that discretion. But discretion may not be exercised whimsically, and reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 354-355 [188 Cal.Rptr. 873, 657 P.2d 365]; *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [185 Cal.Rptr. 232, 649 P.2d 874]; *California Licensed Foresters Assn.* v. *State Bd. of Forestry* (1994) 30 Cal.App.4th 562, 569-574 [35 Cal.Rptr.2d 396]; *Angelheart* v. *City of Burbank* (1991) 232 Cal.App.3d 460, 468-469 [285 Cal.Rptr. 463].)

[3]The Supreme Court has relied on its inherent equitable authority to develop three additional exceptions, the common fund, substantial benefit, and private attorney general theories of recovery. (*Trope* v. *Katz, supra,* 11 Cal.4th at p. 279.)

Because the public always has a significant interest in seeing that laws are enforced, it always derives some benefit when illegal private or public conduct is rectified. Nevertheless, the Legislature did not intend to authorize an award of fees under section 1021.5 in every lawsuit enforcing a constitutional or statutory right. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 939; *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 319, fn. 7 [193 Cal.Rptr. 900, 667 P.2d 704].) ▮ The statute specifically provides for an award only when the lawsuit has conferred "a significant benefit" on "the general public or a large class of persons." The trial court must determine the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case. (*Woodland Hills Residents Assn., Inc., supra,* at pp. 939-940.)

When the record indicates that the primary effect of a lawsuit was to advance or vindicate a plaintiff's personal economic interests, an award of fees under section 1021.5 is improper. (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at pp. 319-320, fn. 7; *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 167 [188 Cal.Rptr. 104, 655 P.2d 306].) "Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 114 [212 Cal.Rptr. 485].) "Instead, its purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate." (*Satrap* v. *Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 80 [49 Cal.Rptr.2d 348].)

To illustrate, in *Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d 158, plaintiffs successfully challenged a condition imposed on a permit by the California Coastal Commission. The Supreme Court held that plaintiffs were not entitled to attorney fees under section 1021.5 because their lawsuit, while based on the constitutional right to be free from the arbitrary deprivation of private property, vindicated only their own personal rights and economic interests and did not confer a significant benefit on a large class of persons. The court emphatically rejected the argument that the decision represented a "ringing declaration" of the rights of other landowners in the coastal zone or would lead to the commission's abandoning its "prior unconstitutional practices." (*Pacific Legal Foundation, supra,* at p. 167.) In other words, the possibility that the lawsuit conveyed a cautionary message to the defendant about its conduct was insufficient to satisfy the significant public benefit requirement.

In *Angelheart* v. *City of Burbank, supra,* 232 Cal.App.3d 460, plaintiffs challenged conditions imposed by the city on their permit for a day care facility. After they obtained a writ directing the city to establish new regulations in compliance with state law, the trial court awarded them fees under section 1021.5. The appellate court reversed. Even though plaintiffs' action involved an important right affecting the public interest, there was no reasonable basis for concluding that it conferred a significant benefit on a large class of persons. There was no evidence of other similarly situated applicants or of other day care homes that were or would be affected by the changes in local law. Nor was there any evidence to support speculative assertions that other cities were violating state law and that the litigation would have ramifications for those cities and other day care providers. (*Angelheart, supra,* at pp. 469-470.)

Other cases illustrating this principle include *Planned Parenthood* v. *City of Santa Maria* (1993) 16 Cal.App.4th 685, 691-692 [20 Cal.Rptr.2d 391] (interests of the general public were incidental to Planned Parenthood's primary objective of obtaining funds in its action to invalidate a restriction conditioning receipt of grant money on waiver of privacy rights); *Kistler* v. *Redwoods Community College Dist.* (1993) 15 Cal.App.4th 1326, 1336-1337 [19 Cal.Rptr.2d 417] (terminated community college employees improperly deprived of accrued vacation pay were not seeking to establish new law on a question of public importance but were simply seeking wages due them); *Wang* v. *Division of Labor Standards Enforcement* (1990) 219 Cal.App.3d 1152, 1161-1162 [268 Cal.Rptr. 669] (any public benefit resulting from general contractor's challenge of an administrative interpretation of a Labor Code section was incidental to the contractor's personal financial stake in the matter).

Here, the trial court found that plaintiff's lawsuit necessarily conferred a significant benefit on a large class of persons because it sent a message to the CHP and other government agencies that sexual discrimination, sexual harassment, and retaliation in violation of the FEHA will not be tolerated. Plaintiff reiterates that rationale for the fee award in this appeal, urging that each time an important right affecting the public interest is enforced, a benefit is conferred on the public in that future wrongdoers are warned that enforcement is not an empty threat. Carried to its logical conclusion, the reasoning adopted by the trial court and espoused by plaintiff would make the private attorney general doctrine applicable in every case in which a plaintiff successfully sued a public agency for some wrongful conduct, because every such lawsuit would communicate a message to the losing party. Such an expansive reading of the statutory requirement is untenable.

While plaintiff's lawsuit was based on the important right to be free from unlawful discrimination, its primary effect was the vindication of her own personal right and economic interest. The evidence does not support the trial court's finding that the lawsuit conferred a significant benefit on the general public or on a large class of persons within the meaning of section 1021.5, and the fee award cannot be upheld based on that statute.

The cases cited by plaintiff that involve police officers do not dictate a contrary conclusion; instead, they illustrate the general rule that fees are appropriate when the litigation establishes a significant public benefit that is not simply incidental to the plaintiff's own personal stake in the matter. *Baggett* v. *Gates*, *supra*, 32 Cal.3d 128, established that the Public Safety Officers' Procedural Bill of Rights Act applied to charter cities, thereby securing for the plaintiffs and many other officers the rights and protections of that act; however, whether plaintiffs themselves would benefit financially from the ruling was uncertain. (*Id.* at pp. 131, 143.) *Aguilar* v. *Johnson* (1988) 202 Cal.App.3d 241 [247 Cal.Rptr. 909], established that police officers have the right to be made aware of and comment on citizens' complaints before they are placed in the officer's personnel file. (*Id.* at p. 253.) *Mounger* v. *Gates* (1987) 193 Cal.App.3d 1248 [239 Cal.Rptr. 18], established that public safety officers need not exhaust their administrative remedies before seeking judicial relief for alleged violations of that act. (*Id.* at p. 1259.) Unlike those cases, the primary effect of plaintiff's litigation was the vindication of her own personal rights.

We have not overlooked *Crommie* v. *State of Cal., Public Utilities Com'n* (N.D.Cal. 1994) 840 F. Supp. 719, affirmed in *Mangold* v. *California Public Utilities Com'n* (9th Cir. 1995) 67 F.3d 1470, which involved plaintiffs who prevailed at trial on age discrimination claims against this state's Public Utilities Commission (PUC). The district court held that plaintiffs were entitled to attorney fees under both the FEHA and section 1021.5. Concerning the latter statute, the district court reasoned in part that the litigation necessarily conferred a benefit on society as a whole as well as the plaintiffs and would deter the PUC and other governmental agencies from undertaking similar discriminatory activities in the future. (*Crommie, supra,* at p. 722.) We disagree with that court's superficial assessment of the significant benefit requirement.

Finally, we reiterate that the private attorney general doctrine codified in section 1021.5 is based on the premise that without some mechanism authorizing a fee award, private actions that effectuate fundamental public policies may be infeasible. (*Maria P.* v. *Riles, supra,* 43 Cal.3d at p. 1289.)

Here, plaintiff's action alleged a violation of the FEHA. As that act itself provides such a mechanism, resort to section 1021.5 is unnecessary.

### Attorney Fees Under the FEHA

 The broad purpose of the FEHA is to safeguard an employee's right to seek, obtain, and hold employment without experiencing discrimination on account of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age. (Gov. Code, § 12920; *Stevenson* v. *Superior Court* (1997) 16 Cal.4th 880, 891 [66 Cal.Rptr.2d 888, 941 P.2d 1157]; *Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) Government Code section 12965, subdivision (b), which authorizes a civil action for damages based on violations of the FEHA, provides in relevant part, "In actions brought under this section, the court, in its discretion may award to the prevailing party reasonable attorney fees and costs except where such action is filed by a public agency or a public official, acting in an official capacity."

Defendant does not dispute plaintiff's entitlement to an award of fees under this section and does not challenge the court's determination of the lodestar as a measurement of reasonable fees. Defendant argues only that the court should not have used a multiplier to increase the lodestar, reasoning as follows: (1) the United States Supreme Court has recently rejected the use of multipliers to enhance fees under federal fee-shifting statutes, including 42 United States Code section 1988; (2) the fee provision in the FEHA is modeled after that federal statute; (3) therefore a multiplier should be precluded when computing a fee award under the FEHA. Defendant contends that the factors used to justify application of the multiplier were subsumed within the lodestar.

We begin our analysis with a discussion of the relevant California law. As we have noted, the FEHA attorney fee provision is one of many statutory exceptions to the rule that parties bear their own fees. That provision was added to the FEHA in 1978. (Stats. 1978, ch. 1254, § 10, pp. 4073-4074.) Before 1977, numerous California courts had held that if a contract or a statute permitted an award of attorney fees or reasonable attorney fees, the determination of the amount was a matter committed to the sound discretion of the trial court. (See, e.g., *La Mesa-Spring Valley School Dist.* v. *Otsuka* (1962) 57 Cal.2d 309, 316 [19 Cal.Rptr. 479, 369 P.2d 7]; *Palm Springs etc. Co.* v. *Kieberk Corp.* (1941) 46 Cal.App.2d 234, 241 [115 P.2d 548]; *Los Angeles* v. *Los Angeles-Inyo Farms Co.* (1933) 134 Cal.App. 268, 274-275

[25 P.2d 224].) The trial court was expected to consider many factors in deciding what constituted a reasonable fee, such as the nature of the litigation, its difficulty, the amount involved, the skill required and employed in handling the litigation, the attention given, the success of the attorney's efforts, the attorney's education and experience, the intricacies and importance of the litigation, the need for skilled legal training and ability in trying the cause, and the time consumed. (*Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 679 [169 P.2d 453]; *Los Angeles, supra,* at p. 276.) But no mechanical formula dictated how the court should evaluate all these factors. Instead, it had wide latitude in assessing the value of the attorney's services, and its decision was not to be disturbed on appeal absent a manifest abuse of discretion. (*Horn* v. *Swoap* (1974) 41 Cal.App.3d 375, 383-384 [116 Cal.Rptr. 113]; *Palm Springs etc. Co., supra,* at p. 241.)

But in 1977, our Supreme Court decided *Serrano III, supra,* 20 Cal.3d 25, holding that a trial court has inherent equitable power to award fees on the private attorney general theory. (*Id.* at pp. 42-47.) When it turned to the amount of the award, the *Serrano III* court reiterated the well-settled principles that the trial court is best qualified to assess the value of services rendered before it and that the question on appeal is whether that court has abused its discretion. At the same time, the *Serrano III* court circumscribed that discretion to some extent by approving the touchstone or lodestar adjustment method of calculating the amount of an award. That method requires the trial court first to determine a touchstone or lodestar figure based on a careful compilation of the time spent and reasonable hourly compensation for each attorney. That touchstone figure may then be augmented or diminished by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award.[4] (20 Cal.3d at pp. 48-49.) The notion that the contingent risk factor may be relevant to a determination of a reasonable fee was not a novel idea under California law. In *Rader* v. *Thrasher* (1962) 57 Cal.2d 244 [18 Cal.Rptr. 736, 368 P.2d 360], the Supreme Court remanded a matter for a determination of the adequacy of consideration under a contingent fee agreement, with a reminder to the trial

[4]Other factors to be considered in determining whether to enhance or reduce an award by applying a " 'multiplier' " include: (1) whether the fee award will fall ultimately on taxpayers because it is against the state; (2) whether the attorneys receive public or foundational funding to bring lawsuits of the type at issue; (3) whether the fees would inure to the benefit of the organizations employing the attorneys rather than to the attorneys themselves. (*Serrano III, supra,* 20 Cal.3d at p. 49; *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 322 & fn. 12.)

court that " '[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable.' [Citations.]" (*Id.* at p. 253.)

At almost the same time *Serrano III* was decided, the Legislature enacted section 1021.5, providing statutory authority for court-awarded attorney fees under a private attorney general theory. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 925 & fn. 1.) The following year, the Legislature amended the FEHA to authorize court-awarded attorney fees. Subsequently, our Supreme Court explicitly decreed that the exercise of the trial court's discretion to award fees under section 1021.5 must be based on the lodestar adjustment method set forth in *Serrano III.* (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at pp. 317, 322; *Maria P.* v. *Riles, supra,* 43 Cal.3d at pp. 1294-1295; see *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 625, fn. 6 [186 Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*).) Furthermore, when interpreting that statute, our high court has made clear that federal law construing comparable statutes is not controlling. In *Serrano IV,* the court noted that it was following the lead of federal courts on the availability of fees for time spent on a fee claim because it found, after an independent examination of case law, that the federal rule has proved workable. But the court cautioned, "Yet it is not our view that federal authority is of more than analogous precedential value in construing section 1021.5. Federal decisions rest in part on evidence of congressional intent . . . for which there is no California parallel. *We envision an independent state rule.*" (*Serrano IV, supra,* at p. 639 and fn. 29, italics added.)

The Supreme Court has never held specifically that trial courts must use the lodestar adjustment method when calculating reasonable fees pursuant to a statute other than section 1021.5. But *Serrano III* itself was not based on any statutory entitlement to fees; instead, it concerned a trial court's equitable power to award reasonable fees. Moreover, its adoption of the lodestar method of calculating reasonable fees was based on the premise that anchoring the analysis to the lodestar figure " 'is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.' " (*Serrano III, supra,* 20 Cal.3d at p. 48, fn. 23, quoting *City of Detroit* v. *Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448, 470.) Thus its pronouncements cannot be read as necessarily limited only to fees awarded under section 1021.5.

Furthermore, several courts of appeal have not restricted application of the *Serrano III* standards to awards based on that statute. For instance, courts have held that a statutory award of reasonable attorney fees in an inverse

condemnation action should be based on the *Serrano III* factors. (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 952-958 [218 Cal.Rptr. 839]; *Aetna Life & Casualty Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 865, 880-881 [216 Cal.Rptr. 831].)

In *State of California* v. *Meyer* (1985) 174 Cal.App.3d 1061 [220 Cal.Rptr. 884], the court declined to hold as a matter of law that trial courts must use a lodestar multiplier to calculate a fee award in an eminent domain proceeding. At the same time, the court commented that the determination of a reasonable fee can include consideration of factors such as the novelty and difficulty of the questions involved, the extent to which the litigation precluded other employment by the attorney, and the contingent nature of the fee award. (*Id.* at pp. 1073-1074.) All those factors, of course, were listed by the *Serrano III* court as relevant to whether the lodestar should be enhanced.

Subsequently, in *City of Oakland* v. *Oakland Raiders* (1988) 203 Cal.App.3d 78 [249 Cal.Rptr. 606], another eminent domain action, the trial court awarded fees by multiplying the hours devoted to the case by the rates charged by top law firms for similar service, and then raising the fees based on the novelty and complexity of the issues, the need for counsel to act quickly throughout the litigation, the deferral of payment of the fees, the importance of the litigation to the Raiders, and the result obtained. Relying on *State of California* v. *Meyer, supra,* 174 Cal.App.3d 1061, Oakland argued that the enhanced award was the improper product of a multiplier. Division Five of this court rejected that argument, reasoning instead that the award was based on factors properly considered in determining reasonable fees. Division Five added, "*Meyer* did not disapprove the use of multipliers in eminent domain cases, but simply declined to hold as a matter of law that the courts *must* use multipliers." (*City of Oakland, supra,* at pp. 83-84.)[5]

Particularly instructive is *Downey Cares* v. *Downey Community Development Com.* (1987) 196 Cal.App.3d 983 [242 Cal.Rptr. 272], in which the trial

---

[5]There is some disagreement over application of the lodestar method in cases involving fees under Civil Code section 1717. In *Sternwest Corp.* v. *Ash* (1986) 183 Cal.App.3d 74 [227 Cal.Rptr. 804], the court held that a trial court has the discretion to enhance a lodestar figure when awarding fees under that statute. On the other hand, in *Montgomery* v. *Bio-Med Specialties, Inc.* (1986) 183 Cal.App.3d 1292, 1296-1298 [228 Cal.Rptr. 709], the court held that notwithstanding *Serrano III*, a trial court is not obligated to state its method of arriving at attorney fees under Civil Code section 1717. The court stated in part that while the " 'rigid requirement' " of *Serrano III* may be vital in public interest litigation, there was no indication *Serrano III* intended to change settled law concerning the standard of review of fees in situations involving other statutes or contracts.

court awarded fees in an action under the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.), specifically using the *Serrano III* lodestar method and applying a multiplier. Appellants argued that the court erred in using any multiplier and urged the application of the guidelines adopted by the United States Supreme Court for federal fee-shifting statutes. The reviewing court disagreed, stating that the federal decisions were interpretations of federal statutes, based in part on available legislative history of congressional intent for which there is no California parallel. "Appellants offer no persuasive reason why the method of calculating fees under [the Political Reform Act] should be so completely different from the method already well established in a large body of California precedent construing an analogous state statute. We find nothing in the language of section 91003 which compels such a conclusion. Indeed, since the Political Reform Act expressly encourages enforcement by private citizen suits, precedents under Code of Civil Procedure section 1021.5 are persuasive in aiding the interpretation of Government Code section 91003. [Citations.] To introduce a radically different interpretation of Government Code section 91003 would bring confusion into California law. As an intermediate appellate court, we are constrained and disposed to apply the existing California approach . . . ." (*Downey Cares, supra,* at pp. 995-996.)

We note that the courts of appeal have specifically considered the contingent risk factor in assessing the reasonableness of fees under various fee-shifting statutes. (*Downey Cares* v. *Downey Community Development Com., supra,* 196 Cal.App.3d at pp. 995-997 & fn. 11; *Beasley* v. *Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1419 [1 Cal.Rptr.2d 459] [reliance on contingency risk factor as basis for multiplier proper in awarding fees under section 1021.5; purpose is to compensate for risk of loss generally in contingency cases as a class, not intended to pay for previous contingency cases the lawyer has lost]; *Aetna Life & Casualty Co.* v. *City of Los Angeles, supra,* 170 Cal.App.3d at pp. 880-881 [reasonableness of attorney fees in inverse condemnation depends in part on contingent nature of fee award].)

We also consider it particularly significant that the Legislature has not rejected the *Serrano III* approach to determining reasonable fees. On the contrary, in 1993 it amended section 1021.5 to permit a fee award to a public entity under certain circumstances, but with the caveat, "Attorney's fees awarded to a public entity pursuant to this section shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in Serrano v. Priest, 20 Cal.3d 25, 49." (Stats. 1993, ch. 645, § 2.) The Legislature is presumed to have knowledge of existing judicial decisions when it enacts and amends legislation. When the Legislature amends a

statute that has been the subject of judicial construction, changing it only in part, the presumption is that the Legislature intended to leave the law unchanged in the aspects not amended. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) The Legislature's express and narrow restriction on the use of multipliers can be read as an implicit endorsement of their use in other contexts.

Defendant would have us ignore this substantial body of California law and look instead to federal cases construing various federal fee-shifting statutes. It is true that when interpreting the FEHA, California courts often adopt standards developed by federal courts in employment discrimination claims arising under title VII of the federal Civil Rights Act (42 U.S.C. § 2000e et seq.) because of similarities in the statutory language. (See, e.g., *Stephens* v. *Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1405 [245 Cal.Rptr. 606] [prevailing plaintiff should ordinarily recover fees unless special circumstances would render an award unjust]; *Bond* v. *Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 921-925 [57 Cal.Rptr.2d 917] [prevailing defendant should ordinarily recover fees only if plaintiff's action was unreasonable, frivolous, meritless, or vexatious]; *Cummings* v. *Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387-1389 [15 Cal.Rptr.2d 53] [same].) But while federal cases may be instructive in interpreting the FEHA, they are not controlling. (See, e.g., *Romano* v. *Rockwell Internat., Inc., supra*, 14 Cal.4th at pp. 495-498 [declining to follow United States Supreme Court decisions under title VII regarding when statute of limitations begins to run in wrongful termination action, because of differences in statutory language and disagreement with high court's reasoning]; *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 217-218 [185 Cal.Rptr. 270, 649 P.2d 912] [holding that punitive damages are available in a FEHA action and declining to follow contrary federal decisions under title VII, based in part on state statute authorizing such damages in noncontractual court actions].)

Defendant relies in large part on United States Supreme Court cases addressing congressional intent underlying federal fee-shifting statutes, which the court discerned from available legislative history. In *Hensley* v. *Eckerhart* (1983) 461 U.S. 424 [103 S.Ct. 1933, 76 L.Ed.2d 40], the high court first addressed the determination of a reasonable fee under Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988), which authorizes such a fee to a prevailing party in civil rights litigation. Relying heavily on reports from the Senate and House of Representatives, the court explained

that the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate provides an objective basis on which to make "an initial estimate" of the value of a lawyer's services. (*Hensley, supra,* at pp. 430-433 [103 S.Ct. at pp. 1937-1939].) The fee may then be adjusted up or down based on considerations such as the results obtained and numerous other factors. At the same time, however, the court cautioned that many of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.[6] (461 U.S. at p. 434 & fn. 9 [103 S.Ct. at pp. 1939-1940].)

The high court refined its views in *Blum* v. *Stenson* (1984) 465 U.S. 886 [104 S.Ct. 1541, 79 L.Ed.2d 891], also involving fees under 42 United States Code section 1988. Again relying on legislative history, the *Blum* court reaffirmed that the proper first step in determining a reasonable fee is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. This time, however, it stressed that the product of the calculation is not simply an initial estimate of the final award; instead, when the applicant has shown that the claimed rate and number of hours are reasonable, the resulting product is *presumed* to be the reasonable fee contemplated by the statute. The court also limited the factors to be considered in determining whether to adjust that lodestar amount, holding that the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation presumably are fully reflected in the lodestar and cannot serve as independent bases for increasing the award. Upward adjustment is justified only "in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' [Citation.]" (*Blum, supra,* at pp. 888-900 [104 S.Ct. at pp. 1543-1550].)

In *Pennsylvania* v. *Del.Valley Citizens' Council* (1986) 478 U.S. 546 [106 S.Ct. 3088, 92 L.Ed.2d 439] (*Del. Valley I*), the court emphasized that the

[6]The *Hensley* court stated that the district court may also consider other factors identified in *Johnson* v. *Georgia Highway Express, Inc.* (5th Cir. 1974) 488 F.2d 714, 717-719. (*Hensley* v. *Eckerhart, supra,* 461 U.S. at p. 434, fn. 9 [103 S.Ct. at p. 1940].) Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. (*Johnson* v. *Georgia Highway Express, Inc., supra,* 488 F.2d at pp. 717-719.)

lodestar figure includes most, if not all, of the relevant factors constituting reasonable fees, including considerations relating to the quality of counsel's performance. (*Id.* at pp. 565-566 [106 S.Ct. at pp. 3098-3099].) And in *Pennsylvania* v. *Del.Valley Citizens' Council* (1987) 483 U.S. 711 [107 S.Ct. 3078, 97 L.Ed.2d 585], a plurality of the court expressed the view that Congress did not intend the risk of losing a lawsuit to be an independent basis for increasing an otherwise reasonable fee. (*Id.* at pp. 715-727 [107 S.Ct. at pp. 3081-3088] (plur. opn. by White, J., concurred in by Rehnquist, C. J., and Powell, Scalia, JJ.).) Finally, in *Burlington* v. *Dague* (1992) 505 U.S. 557 [112 S.Ct. 2638, 120 L.Ed.2d 449], the majority adopted that view, squarely holding that enhancement of the lodestar for contingency is not permitted under federal fee-shifting statutes.[7] It reasoned that an enhancement for contingency duplicates factors already subsumed in the lodestar, i.e., the higher number of hours expended to overcome the difficulty of establishing the merits or the higher hourly rate of an attorney skilled and experienced enough to do so. It acknowledged that the relative merits of the claim are not reflected in the lodestar, but stated that a contingent risk enhancement would provide the same incentive to bring relatively meritless claims as those with merit, an unlikely objective of any "reasonable fees" provision. It also reasoned that the statutory language limiting fees to prevailing parties should bar recovery for the risk of loss. To award a contingency enhancement under a fee-shifting statute in effect pays for the attorney's time or anticipated time in other cases where his or her client does not prevail. (*Id.* at pp. 562-565 [112 S.Ct. at pp. 2641-2643].)

The United States Supreme Court's criticisms of the contingency risk enhancement have considerable persuasive force. Also compelling are its observations that factors such as the novelty and complexity of the case and the special skill and experience of counsel are necessarily reflected in the lodestar and do not merit an enhancement of that figure. Its comments on the purpose of fee-shifting statutes are worth repeating. "These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. Hence, if plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he [or she] will be paid a

---

[7]The fee-shifting statutes at issue were part of the Solid Waste Disposal Act and the Federal Water Pollution Control Act, but the court emphasized that its case law construing what is a "reasonable" fee applies uniformly to all federal fee-shifting statutes, including title 42 United States Code sections 1988 and 2000e. (*Burlington* v. *Dague, supra,* 505 U.S. at pp. 561-562 [112 S.Ct. at pp. 2640-2641].)

'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied. [¶] . . . In short, the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee . . . in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." (*Del.Valley I, supra,* 478 U.S. at pp. 565-566 [106 S.Ct. at p. 3098].)

Nevertheless, those cases are based in substantial part on federal legislative history, for which there is no California parallel. Defendant has not demonstrated that the California Legislature intended or intends federal standards to apply to limit the trial court's exercise of discretion in calculating the amount of reasonable attorney fees under California fee-shifting statutes generally or under the FEHA provision in particular. With respect to the FEHA fee provision, our Supreme Court once observed that the Legislature's "sole aim appears to have been to contravene the general rule in California that, absent contrary agreement, litigants are not entitled to fees." (*Commodore Home Systems, Inc.,* v. *Superior Court, supra,* 32 Cal.3d at p. 216.) As we have explained, the Legislature appears to have endorsed the *Serrano III* method of calculating fees, except in certain limited situations. *Serrano III* included the contingent nature of the case among the factors that may warrant enhancing the lodestar, and we are obligated to follow cases decided by our Supreme Court unless they can be fairly distinguished. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *Trope* v. *Katz, supra,* 11 Cal.4th at p. 287.) Unless and until our Supreme Court decides to revisit or reexamine its *Serrano III* directives concerning the calculation of reasonable fees or the Legislature clearly expresses its disapproval of those directives, we consider ourselves bound by that approach.[8]

In sum, given the state of California law, we cannot say that it is an abuse of discretion for a trial court awarding fees under the FEHA ever to apply a multiplier in determining reasonable attorney fees. Nor is it an abuse of discretion to take into account the contingent nature of the case when setting a reasonable fee under the FEHA. But our conclusion that trial courts must look to California precedent, not federal law, in determining the amount of

---

[8]In *Crommie* v. *State of Cal., Public Utilities Com'n, supra,* 840 F.Supp. 719, the federal district court assumed, without analysis, that California would apply the *Serrano III* standards to an award of fees in a FEHA action. (*Crommie, supra,* at pp. 722-725.) On appeal, the Ninth Circuit declined to forecast that the California Supreme Court will adopt the federal approach to contingent-fee enhancements, pointing out that its duty is to ascertain and apply existing California law, not predict that the state may change that law. (*Mangold* v. *California Public Utilities Com'n, supra,* 67 F.3d at p. 1479.)

reasonable attorney fees under the FEHA does not mean that we can affirm the fee award in this case.

We readily acknowledge the discretion of the trial judge to determine the value of professional services rendered in his or her court. (*Serrano III*, *supra*, 20 Cal.3d at p. 49.) Nevertheless, the exercise of that discretion must be based on a proper utilization of the lodestar adjustment method, both to determine the lodestar figure and to analyze the factors that might justify application of a multiplier. Whether an award is justified and what amount that award should be are two distinct questions, and the factors relating to each must not be intertwined or merged. (See *Press* v. *Lucky Stores, Inc.*, *supra*, 34 Cal.3d at pp. 322-324.)

The trial court in this case did not apply the correct standards in determining the amount of the award. First, the court reasoned in part that a multiplier was warranted under the FEHA because the criteria of section 1021.5 were satisfied, including the requirement that the litigation had conferred a significant benefit on the general public or a large class of persons. But those criteria only govern a party's entitlement to an award under the private attorney general statute in the first instance. They do not provide any basis for calculating the amount of an award, let alone for enhancing or applying a multiplier to the lodestar. Even more important, as we have explained, the court's finding that a significant benefit was conferred on the public was based on an apparent misconception of the nature of that requirement and was erroneous. Accordingly, the court erred when it used this factor to justify applying a multiplier.

The court's order also reveals that some of the factors upon which it relied to calculate the reasonable hourly rate component of the lodestar, i.e., the skill and experience of the attorneys and the nature of the work performed, were duplicative of the factors that it cited to justify enhancing the lodestar. When the trial court explicitly takes such factors into account in setting the lodestar, there is no logical basis for using them again to enhance or apply a multiplier to the award. As the prevailing party, plaintiff was entitled only to "reasonable attorney fees" (Gov. Code, § 12965, subd. (b)), not reasonable fees plus a windfall. We do not understand *Serrano III* and its progeny to countenance such express double counting, which can only result in an unreasonable fee.

Accordingly, we will reverse the order and remand the matter for a reconsideration of the amount of the award.

## DISPOSITION

The order is reversed and the matter is remanded for a reconsideration of the amount of the fee award consistent with the views expressed in this opinion.

Dossee, J., and Swager, J., concurred.