[No. S080150. Aug. 13, 2001.]

LESLIE FLANNERY, Plaintiff, Cross-defendant and Appellant, v. JOHN F. PRENTICE et al., Defendants and Cross-complainants and Respondents.

## COUNSEL

Nagley & Meredith, Nagley, Meredith & Miller and Lawrence N. Hensley for Plaintiff, Cross-defendant and Appellant.

Joe Ross McCray; Lewis, D'Amato, Brisbois & Bisgaard, Frederick Bruce Legernes; Law Offices of Richard M. Pearl and Richard M. Pearl for Defendants, Cross-complainants and Respondents.

## OPINION

**WERDEGAR, J.**—The question presented is to whom, as between attorney and client, attorney fees awarded under Government Code section 12965 (hereafter section 12965),[1] part of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), belong when no contractual agreement provides for their disposition. We conclude that, absent proof on remand of an enforceable agreement to the contrary, the attorney fees awarded in this case belong to the attorneys who labored to earn them.

### BACKGROUND

The Court of Appeal adequately stated the relevant facts. Plaintiff Leslie Flannery sued her former employer, the California Highway Patrol (CHP),

[1]Section 12965 addresses elimination of unlawful discriminatory practices through conference, conciliation, persuasion, and accusation, as well as right-to-sue notices and civil actions under FEHA. As relevant here, section 12965 provides: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity." (§ 12965, subd. (b).)

alleging violations of FEHA. The jury awarded plaintiff $250,000 in damages. The trial court awarded $1,088,231 in attorney fees, expressly basing the award both on Government Code section 12965, subdivision (b) and on Code of Civil Procedure section 1021.5. (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 632-633 [71 Cal.Rptr.2d 632] (*Flannery I*).)

On appeal by the CHP, the Court of Appeal concluded that the fee award was improper insofar as it was based on Code of Civil Procedure section 1021.5 and that, insofar as it was based on FEHA, the trial court had not applied the correct standards in determining the amount. The Court of Appeal remanded for reconsideration of the amount of the fee award. (*Flannery I, supra,* 61 Cal.App.4th at p. 648.) On remand, the trial court applied a reduced multiplier and awarded $891,042 in fees and expenses for the underlying case and $80,642 in fees and expenses for fee work. The CHP also appealed that award, and the Court of Appeal unanimously affirmed it.[2]

Meanwhile, Flannery brought this action against her former counsel, John F. Prentice, John H. Scott, and the law firms of Prentice & Scott, and Bley & Bley, John Prentice's former firm (collectively, defendants). Her amended complaint included causes of action for declaratory relief, breach of fiduciary duties, legal malpractice, and constructive fraud. She sought damages and a judicial declaration that she was entitled to the entire statutory fee awarded in the earlier action. Flannery alleged that she and defendants had orally entered into a contingent fee agreement entitling defendants only to "40% of the net settlement or net award of the jury." She also contended that defendants' failure to advise her of the terms and conditions of their representation and to obtain her full and informed consent to a fee agreement constituted a breach of their fiduciary duties, legal malpractice, and constructive fraud. The amended complaint also included causes of action for breach of fiduciary duty and legal malpractice based on allegations that defendants had in the FEHA litigation failed to present competent evidence of future wage loss.

Prentice & Scott cross-complained against Flannery, seeking a declaration that they were entitled to the statutory fee award and, in the alternative, recovery in quantum meruit or damages for breach of contract. Prentice & Scott contended they had a contingency agreement with Flannery providing they would receive either "forty percent of the amount recovered from a jury

---

[2]We grant defendants' request that we take judicial notice of the appellate record in *Flannery v. State of California* (Jan. 21, 2000, A086398) (nonpub. opn.), which includes the record of *Flannery v. California Highway Patrol* (Super. Ct. Alameda County, 1999, No. 726290-8).

verdict or the entirety of statutory fees that might be awarded . . . ." Additionally, Bley & Bley cross-complained against Prentice & Scott for equitable indemnity and contractual damages.

Defendants moved for summary judgment on Flannery's complaint. Prentice & Scott also moved for summary adjudication on their declaratory relief cause of action. The trial court granted summary judgment for defendants, concluding as matters of law that Flannery was not entitled to the attorney fee award in the FEHA litigation and that there had been no malpractice. The trial court also granted Prentice & Scott's motion for summary adjudication, declaring that, as a matter of law, they were entitled to the proceeds of the attorney fee award in the FEHA litigation. The remaining claims in the cross-complaints were dismissed voluntarily.

The Court of Appeal reversed, reasoning, in the published portion of its opinion, that attorney fees awarded under section 12965, subdivision (b) belong to the litigant formally awarded them (who may or may not agree to give these fees to counsel as compensation), and that whether any compensation agreement exists in this case presents a triable question of fact.

## DISCUSSION

A. *Who owns funds awarded pursuant to section 12965 when no contract provides for their disposition?*

As noted, in private actions brought under section 12965, "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees . . . ." (§ 12965, subd. (b).) The propriety of the court's having awarded fees in this case is not at issue; our question pertains to the ownership of the statutory award. In such circumstances, our fundamental task is to "ascertain the Legislature's intent in order to effectuate the law's purpose." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944].) As will appear, while the legislative purposes underlying FEHA and its attorney fee provision are relatively clear, which formulation (among various combinations of rules and exceptions proffered by the parties) will most reliably effectuate these purposes is a closer question. We conclude that any proceeds of a section 12965 fee award exceeding fees the client already has paid belong, absent a contractual agreement validly disposing of them, to the attorneys for whose work they are awarded.

### 1. *Statutory language*

We begin our inquiry by examining section 12965's words, giving them a plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16

Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) In doing so, however, we do not consider the statutory language in isolation. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Rather, we look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . ." (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].) We avoid any construction that would produce absurd consequences. (*People v. Mendoza* (2000) 23 Cal.4th 896, 908 [98 Cal.Rptr.2d 431, 4 P.3d 265].)

While it is true that section 12965 authorizes fee awards "to the prevailing *party*" (§ 12965, subd. (b), italics added), that language does not unambiguously favor plaintiff. ■ "The word 'part[y]' is reasonably susceptible to more than one interpretation." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 582 [41 Cal.Rptr.2d 878, 896 P.2d 171].) "In the countless procedural statutes in which the term 'party' is used, it is commonly understood to refer to either the actual litigant or the litigant's attorney of record. [Citations.] Since that is the ordinary import of the term, that is the meaning we must ascribe to it when used in [a statute], unless the Legislature has clearly indicated a contrary intent . . . ." (*McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1164 [69 Cal.Rptr.2d 692], citing *Levy v. Superior Court, supra*, at p. 583; see also *Trope v. Katz* (1995) 11 Cal.4th 274, 282 [45 Cal.Rptr.2d 241, 902 P.2d 259].)[3]

■ Even if we were to construe "party" in section 12965 formally to designate a litigant only, that would not preclude our also declaring that *beneficial* ownership of section 12965 fees remains, absent contract, with the attorneys they are designed to compensate. (Cf. *U.S. v. Jerry M. Lewis Truck Parts & Equipment* (9th Cir. 1996) 89 F.3d 574, 577, cert. den. (1997) 519 U.S. 1109 [117 S.Ct. 945, 136 L.Ed.2d 834] (*Virani*) [concluding, in an action under the federal False Claims Act, that a client's "right" to reasonable attorney fees "is really a power to obtain fees for his attorney; the attorneys' right does not come into being until the client exercises that power; the defendant's liability will only arise if that power is exercised"].)

■ Section 12965 expressly authorizes the award only of attorney fees. An award that does not compensate the litigant for payments made to, owed

---

[3]That this court, as the dissent observes, "has invalidated statutory awards of attorney fees when ordered paid directly to a party's *lawyer*" (dis. opn. of Kennard, J., *post*, at p. 594) does not undermine our conclusion, as the cases cited by the dissent all rely, ultimately, on our holding in *Sharon v. Sharon* (1888) 75 Cal. 1, 38 [16 P. 345], that the Legislature, in authorizing divorce courts to "require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action" (former Civ. Code, § 137) plainly *intended* that the money be paid to the wife, rather than directly to her attorneys. No such plain intent obtains in this case.

to, or forgiven[4] by an attorney or attorneys is, in one sense, not an "attorney's fee" at all. Read plainly in accordance with this language, therefore, section 12965 does not authorize awards that the litigant is not (absent agreement, at any rate) obligated to pay as attorney compensation. Indeed, as we previously have recognized, "the usual and ordinary meaning of the words 'reasonable attorney's fees' is the consideration that a litigant pays or becomes liable to pay in exchange for legal representation." (*Trope v. Katz, supra,* 11 Cal.4th at p. 282.)[5]

■ Despite the foregoing, section 12965 is nevertheless, in our view, "sufficiently ambiguous to warrant our consideration of evidence of the Legislature's intent beyond the words of the statute." (*Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 779 [98 Cal.Rptr.2d 1, 3 P.3d 286].) Accordingly, in order to ascertain the most reasonable interpretation of section 12965, we may examine extrinsic information, including the statute's legislative history and underlying purposes. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

### 2. *Legislative intent*

Plaintiff takes the position that, because she is the "prevailing party" and defendants are unable to prove the existence of a compensation agreement, she is entitled to retain not only the jury's $250,000 damages judgment—which, minus some costs, already has been disbursed to her—but, in addition, the full amount of the court's attorney fee award. We do not believe our Legislature could have intended such an outcome.

Plaintiff urges us to construe section 12965 in the light of federal cases construing certain federal statutory attorney fee provisions. Generally speaking, the cases cited have recognized the right of the client, rather than the attorney, to seek, recover, or waive statutory fees. ■ We are of course not bound by lower federal appellate decisions. (*People v. Zapien* (1993) 4 Cal.4th 929, 989 [17 Cal.Rptr.2d 122, 846 P.2d 704]; see, e.g., *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 217-218 [185 Cal.Rptr. 270, 649 P.2d 912] [declining to follow federal decisions barring punitive damages in federal discrimination actions].) And while the high

---

[4]As, for example, in the event an attorney for charitable, ethical, or other professional reasons provides services pro bono or at a reduced rate. (See fn. 5, *post.*)

[5]Of course, the above general definition of attorney fees "was not intended to imply that fees can be recovered only when, and to the extent that, a litigant incurs fees on a fee-for-service basis, a question not raised therein." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1097, fn. 5 [95 Cal.Rptr.2d 198, 997 P.2d 511] [entity represented by in-house counsel may recover attorney fees under Civ. Code, § 1717].)

court's pronouncements respecting fees awarded under federal statutes may be instructive, they do not control our construction of FEHA's attorney fee provision. (Cf. *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 495-498 [59 Cal.Rptr.2d 20, 926 P.2d 1114] [declining in FEHA matter to follow United States Supreme Court decisions concerning federal statute of limitations for wrongful termination actions].) As has been recognized (see, e.g., *Flannery I, supra,* 61 Cal.App.4th at p. 643), the federal decisions urged by plaintiff are to some extent based on federal legislative history, which is without California parallel. (See, e.g., *Evans v. Jeff D.* (1986) 475 U.S. 717, 731 [106 S.Ct. 1531, 1539-1540, 89 L.Ed.2d 747] (*Evans*) [discussing 42 U.S.C. §'1988 "and its legislative history"].)

Plaintiff relies most heavily on two United States Supreme Court cases involving attorney fees awarded under 42 United States Code section 1988.[6] In *Evans, supra,* 475 U.S. 717, a class action, the issue of who "owns" an attorney fee award arose because the clients sought to waive that remedy in order to effect settlement. The high court held the district court in that case had not abused its discretion by approving a settlement that included a fee waiver (*id.* at pp. 729-730 [106 S.Ct. at pp. 1538-1539]), noting that a "straightforward reading of § 1988" (*id.* at p. 730, fn. 19 [106 S.Ct. at p. 1539]) indicates Congress bestowed fee award eligibility "on the 'prevailing party' " (*id.* at p. 730 [106 S.Ct. at p. 1538]). Congress in section 1988 "did not prevent the party from waiving this eligibility anymore than it legislated against assignment of this right to an attorney" (*Evans, supra,* at pp. 730-731 [106 S.Ct. at p. 1539]), the court reasoned. More recently, in *Venegas v. Mitchell* (1990) 495 U.S. 82 [110 S.Ct. 1679, 109 L.Ed.2d 74] (*Venegas*), the high court held 42 United States Code section 1988 did not invalidate a contingent attorney fee contract requiring a prevailing civil rights plaintiff to pay his attorney more than the statutory fees awarded by the court. (*Venegas, supra,* at pp. 83-84, 90 [110 S.Ct. at pp. 1680-1681, 1684].) In so holding, the court reiterated that "it is the party, rather than the lawyer, who is . . . eligible" (*id.* at p. 87 [110 S.Ct. at p. 1682]) for a section 1988 award.

To the extent the high court's construction of 42 United States Code section 1988 properly may inform our construction of Government Code section 12965, of course, *Evans* and *Venegas* would support the view that it was plaintiff (as opposed to defendants) who was "eligible" to seek the fee award in the FEHA litigation below. "Neither case, however, expressly considered the narrow question we face: whether a party may receive or keep the proceeds of a fee award when she has neither agreed to pay her

---

[6]Title 42 United States Code section 1988 provides, inter alia, that, in certain federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." (42 U.S.C. § 1988(b).)

attorneys nor obtained from them a waiver of payment." The United States Supreme Court has not spoken to that precise question, and " 'an opinion is not authority for a proposition not therein considered.' " (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 143 [87 Cal.Rptr.2d 132, 980 P.2d 846].)[7]

In any event, the high court's analysis of 42 United States Code section 1988 fee eligibility is not incompatible with the trial court's ruling that defendants Prentice & Scott are entitled to the proceeds of the fee award that plaintiff concedes she authorized defendants to seek. As the Ninth Circuit Court of Appeals explained in *Virani, supra,* 89 F.3d 574, *Evans* stands for the proposition that, under 42 United States Code section 1988, only a plaintiff has the power to demand that a defendant pay the fees of the plaintiff's attorney, and "the defendant's liability will only arise if that power is exercised" (*Virani, supra,* at p. 577). But once the client's power to demand attorney fees is exercised, the attorney's right to receive them "come[s] into being." (*Ibid.*) Accordingly, and as pertinent for our purposes, "[t]he plaintiff has no power to confer the fee upon himself." (*Ibid.*; but see *Gilbrook v. City of Westminster* (9th Cir. 1999) 177 F.3d 839, 874-875 [holding 42 U.S.C. § 1988 fee award payable directly to party rather than counsel].)

Outside of the 42 United States Code section 1988 fee eligibility context, federal fee-shifting jurisprudence is not uniform; federal courts vary their handling of attorney fee awards depending on the context, sometimes awarding fees to litigants and sometimes directly to counsel.[8] Despite this lack of uniformity, however, "[t]he propriety of a direct award to the plaintiffs' attorney, rather than to plaintiffs themselves, in the exercise of the court's

---

[7]The holding of *Evans,* moreover, expressly was limited to "the facts of record in this case" (*Evans, supra,* 475 U.S. at p. 729 [106 S.Ct. at p. 1538]) bearing on whether the public agency defendants sought fee waivers as a matter of policy or sought generally "to deter attorneys from representing plaintiffs in civil rights suits" (*id.* at p. 740 [106 S.Ct. at p. 1544]), a question not presented in this case.

[8]Compare, e.g., *Freeman v. B & B Associates* (D.C. Cir. 1986) 790 F.2d 145 (attorney cannot sue for fees under Truth-in-Lending Act) and *First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas & E. Co.* (8th Cir. 1957) 245 F.2d 630 (Clayton Act fees accrue only to party injured) with *Rodriguez v. Taylor* (3d Cir. 1977) 569 F.2d 1231, 1245 (to avoid windfall, Age Discrimination in Employment Act fee awards "must accrue to counsel"); *Hairston v. R & R Apartments* (7th Cir. 1975) 510 F.2d 1090, 1093 (to avoid windfall, fees granted under Fair Housing Act "should go directly to the organization providing the services"); *Brandenburger v. Thompson* (9th Cir. 1974) 494 F.2d 885, 889 (equitable fee award "should be made directly to the organization providing the services to ensure against a windfall to the litigant"); *Miller v. Amusement Enterprises, Inc.* (5th Cir. 1970) 426 F.2d 534, 539 (in awarding fees under the public accommodations provisions of Civil Rights Act of 1964, court has "equitable powers [to] assure that the fees allowed are to reimburse and compensate for legal services rendered and will not go to the litigants, named or class").

equitable powers, is no longer questioned in the federal courts." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 47, fn. 21 [141 Cal.Rptr. 315, 569 P.2d 1303], citing numerous authorities.)[9]

Until the Court of Appeal rendered an opinion in this case, no California court had published a view as to whether attorney fees awarded under section 12965 belong, absent contract, to the party or to the party's attorneys, or whether the term "prevailing party" as used in that statute may in appropriate circumstances be construed to include counsel. But at the time the statutory language, originally part of the Labor Code, was first enacted (see *Commodore Home Systems, Inc. v. Superior Court, supra*, 32 Cal.3d at p. 216, citing Stats. 1978, ch. 1254, § 10, p. 4073), California courts, including this court, had determined that courts awarding attorney fees, including statutory fees, *could* pay them directly to the prevailing litigant's attorney. (See, e.g., *Serrano v. Priest, supra*, 20 Cal.3d at p. 47 [upholding award of "private attorney general" fees directly to attorneys for plaintiffs who challenged state school funding scheme]; *Horn v. Swoap* (1974) 41 Cal.App.3d 375, 383-384 [116 Cal.Rptr. 113] [Welf. & Inst. Code, § 10962 fees properly paid " 'directly to counsel for petitioner' " who challenged welfare regulation]; *Knoff v. City etc. of San Francisco* (1969) 1 Cal.App.3d 184, 203-204 & fn. 14 [81 Cal.Rptr. 683] [court in class action had discretion under city charter to award fees directly to counsel].)

In 1982, upholding an attorney fee award under Code of Civil Procedure section 1021.5, which codifies the "private attorney general" fee doctrine,[10] we considered it "established that awards are properly made to plaintiffs' attorneys rather than to plaintiffs themselves." (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 682 & fn. 26 [186 Cal.Rptr. 589, 652 P.2d 437].) Neither in enacting nor in amending Government Code section 12965,[11] or FEHA generally, has the Legislature repudiated such precedents.

The basic, underlying purpose of FEHA is to safeguard the right of Californians to seek, obtain, and hold employment without experiencing

---

[9]Plaintiff acknowledges that federal authority exists for awarding statutory fees directly to an attorney when it is uncontested that the lawyer is contractually entitled to the fee award, citing, inter alia, *Richardson v. Penfold* (7th Cir. 1990) 900 F.2d 116, 117 and *Dennis v. Chang* (9th Cir. 1980) 611 F.2d 1302, 1309.

[10]In pertinent part, Code of Civil Procedure section 1021.5 provides that, under specified circumstances, a court "may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest."

[11]Section 12965 was added by the 1980 Statutes and Amendments to the Codes (Statutes), chapter 992, section 4, page 3157 and amended by Statutes 1980, chapter 1023, section 9, page 3284; Statutes 1984, chapter 217, section 1, page 688; Statutes 1984, chapter 420, section 1.5, page 1792; Statutes 1992, chapter 911, section 5, page 4240; Statutes 1992, chapter 912, section 7.1, page 4276; Statutes 1998, chapter 931, section 183; Statutes 1999, chapter 591, section 12; and Statutes 2000, chapter 189, section 1.

discrimination on account of race, religious creed, color, national origin, ancestry, physical disability, medical disability, medical condition, marital status, sex, age, or sexual orientation. (Gov. Code, § 12920; *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 891 [66 Cal.Rptr.2d 888, 941 P.2d 1157].) There is no doubt that " 'privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions' " (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874]), and " '[w]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' " (*Ibid.*)[12]

Attorneys considering whether to undertake cases that vindicate fundamental public policies may require statutory assurance that, if they obtain a favorable result for their client, they will actually receive the reasonable attorney fees provided for by the Legislature and computed by the court. As the high court has recognized, the aim of fee-shifting statutes is "to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific . . . laws. Hence, if plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied." (*Pennsylvania v. Del. Valley Citizens' Council* (1986) 478 U.S. 546, 565 [106 S.Ct. 3088, 3098, 92 L.Ed.2d 439] [discussing federal Clean Air Act].)

Because contracts are not always obtainable or obtained and always may be disputed, were we to interpret section 12965 as plaintiff urges, vesting ownership of fees awarded thereunder and not disposed of by contract in the litigant, rather than in counsel, we would diminish the certainty that attorneys who undertake FEHA cases will be fully compensated, and to that extent we would dilute section 12965's effectiveness at encouraging counsel to undertake FEHA litigation. Such an interpretation of section 12965, thus, ultimately would tend to undermine the Legislature's expressly stated purpose of FEHA "to provide effective remedies that will eliminate these discriminatory practices." (Gov. Code, § 12920.)

Construing section 12965 as vesting ownership of unassigned fees (i.e., fees not disposed of by contract) awarded thereunder in the litigant rather

---

[12]See also *Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1405 [245 Cal.Rptr. 606] (if § 12965 awards "were doubtful in California courts, . . . [t]his would effectively defeat the policy of keeping the California law as an effective remedy against age discrimination"); *Crommie v. State of Cal., Public Utilities Com'n* (N.D.Cal. 1994) 840 F.Supp. 719, 723, footnote 2 (acknowledging that, "without the possibility of an award of fees," age discrimination plaintiffs would not have been able to obtain counsel); *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 244 [261 Cal.Rptr. 520] (same, in sex discrimination case).

than counsel also would be inconsistent with the established method for calculating reasonable attorney fees under FEHA. Pursuant to long-established precedent and practice, section 12965 fees are calculated by determining the number of hours reasonably worked by the attorneys who prosecuted the matter and multiplying that number by the reasonable hourly rate those attorneys should receive for such work. Depending on the circumstances, consideration may also be given to the attorneys' experience, the difficulty of the issues presented, the risk incurred by the attorneys in litigating the case, the quality of work performed by the attorneys, and the result the attorneys achieved. (*Serrano v. Priest, supra,* 20 Cal.3d at p. 48.) Again, never in its frequent amendments to FEHA has the Legislature questioned this practice or the precedents validating it.

### 3. *Public policy*

Construing section 12965 as vesting ownership of unassigned attorney fees awarded thereunder in counsel rather than the litigant (to the extent fees are not otherwise paid) will, moreover, advance important public policies. Specifically, such a construction will:

### a. *Encourage representation of legitimate FEHA claimants and discourage nonmeritorious suits*

It need hardly be reiterated that "[t]he policy that promotes the right to seek and hold employment free of prejudice is fundamental. Job discrimination 'foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general.'" (*Commodore Home Systems, Inc. v. Superior Court, supra,* 32 Cal.3d at p. 220, quoting Gov. Code, § 12920.) As California courts long have recognized, section 12965 fees are intended to provide "fair compensation to the attorneys involved in the litigation at hand and encourage[] litigation of claims that in the public interest merit litigation." (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1172 [74 Cal.Rptr.2d 510].) As discussed above, our construing section 12965 to vest ownership of fees awarded thereunder in counsel, when, for whatever reason, no contract exists disposing of them, thus diminishing the risk of noncompensation or undercompensation, will enhance the likelihood that attorneys who undertake FEHA cases will be fully compensated, and to that extent will enhance the

fee provision's effectiveness in encouraging counsel to undertake FEHA litigation.[13]

The availability of FEHA fees, moreover, is reciprocal, benefiting defendants forced to defend frivolous suits, as well as plaintiffs who bring meritorious suits. (See, e.g., *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1126 [75 Cal.Rptr.2d 27] [awarding § 12965 fees on appeal to defendant employers in sex discrimination case].) Accordingly, our construing section 12965's attorney fee provision to assure compensation of attorneys who successfully represent FEHA litigants will further the important public policy of discouraging frivolous suits as well as the policy of encouraging meritorious ones.[14]

### b. *Avoid unjust enrichment*

The "usual fee-shifting statute" is not "intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." (*Pennsylvania v. Del. Valley Citizens' Council, supra*, 478 U.S. at p. 565 [106 S.Ct. at p. 3099].) In a particular case, an award of "reasonable" attorney fees under a fee-shifting statute might not match the actual amount a client has paid or agreed to pay, because such awards generally "are computed from their reasonable market value" (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 643 [186 Cal.Rptr. 754, 652 P.2d 985]) even if the attorney has performed services pro bono or for a reduced fee. (See also *Blum v. Stenson* (1984) 465 U.S. 886, 895 [104 S.Ct. 1541, 1547, 79 L.Ed.2d 891] [" 'reasonable fees' under [42 U.S.C.] § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel"].) In this case, of course, plaintiff, the client, has not paid defendants any fees, and it remains disputed whether any enforceable contract provides for disposition of the fee award.

An attorney who appears in propria persona, doing all the legal work involved in a matter, is not entitled to collect statutory attorney fees. (*Trope v. Katz, supra*, 11 Cal.4th at p. 292 [fees sought under Civ. Code, § 1717];

---

[13]Contrary to plaintiff's implication, such enhancement of section 12965's (and FEHA's) underlying antidiscrimination purposes is, as the high court has recognized in another context, "a goal not invariably inconsistent with [recognizing litigants' right of] conditioning settlement on the merits on a waiver of statutory attorney's fees." (*Evans, supra*, 475 U.S. at p. 732 [106 S.Ct. at p. 1540].)

[14]On the other hand, if we were to decide this case as plaintiff urges, we would risk encouraging litigants who have not expressly assigned fees to run up their lawyers' bills as high as possible, in order to increase *their* recovery with every hour of work their *attorneys* are performing.

*Kay v. Ehrler* (1991) 499 U.S. 432, 437-438 [111 S.Ct. 1435, 1437-1438, 113 L.Ed.2d 486] [same, in 42 U.S.C. § 1988 case].) A fortiori, defendants argue, a person who is represented by counsel, and thus has done none of the legal work for which statutory attorney fees are intended as compensation, should not (absent agreement) be entitled to retain any such that may be awarded.

Without concluding that such reasoning would hold in every context, it seems evident that, in general, where attorney compensation has neither been paid nor forgiven and there is no contract assuring it, allowing a victorious litigant to retain the proceeds of a fee award (in addition to a substantial damages judgment) would confer an unjustified windfall.

### c. *Ensure fairness*

Vesting ownership of unassigned section 12965 fees in counsel rather than the prevailing litigant (to the extent fees are not otherwise paid) is fairer than the alternative to the litigants who must pay such fees. Statutory attorney fees are not of course intended to compensate the "prevailing party" for damages suffered. (See *Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1308 [58 Cal.Rptr.2d 303].) Nor by definition do they compensate the party for litigation costs when no agreement requiring attorney compensation exists and no fees have been paid. Paying the proceeds of a section 12965 award to the party rather than to counsel in such circumstances would, from the perspective of those paying them, transform the award, without legislative authorization, into a kind of punitive damages.

### d. *Address ethical concerns*

Allowing litigants to keep the unassigned proceeds of section 12965 awards would amount, defendants contend, to improper sharing of legal fees by nonlawyers. With exceptions not relevant here, California attorneys are enjoined not to "directly or indirectly share legal fees with a person who is not a lawyer." (Rules Prof. Conduct, rule 1-320(A).)

Plaintiff argues, on the other hand, that any rule permitting payment of section 12965 fees directly to counsel would contravene conflict of interest principles barring attorneys from obtaining pecuniary interests adverse to their clients. As defendants cannot produce a written agreement entitling them to the disputed award, plaintiff argues, those proceeds cannot be paid directly to them. (See Rules Prof. Conduct, rule 3-300 (rule 3-300); State Bar Standing Com. on Prof. Responsibility and Conduct, Formal Opn. No. 1994-136 (1994) pp. 1, 2 (State Bar Advisory Opinion [in order ethically to

obtain "exclusive possession of the right to collect attorney's fees, and therefore to control settlement, . . . a 'possessory interest' adverse to the client[,] . . . the member must comply with rule 3-300" by obtaining client consent to fair and reasonable terms after full disclosure in writing].)

We agree with defendants that plaintiff's proffered construction would implicate in some measure the policy our fee-splitting prohibition is designed to advance. Plaintiff's argument premised on rule 3-300, on the other hand, is less persuasive, as the State Bar Advisory Opinion construing that rule "only addresses the propriety of such agreements in the context of actions brought under 42 United States Code section 1988" (State Bar Advisory Opn., *supra*, at p. 1) and expressly was "advisory only" (*id.* at p. 5), "not binding on the courts, the State Bar of California, its Board of Governors, any persons or tribunals charged with regulatory responsibilities, or any member of the State Bar" (*ibid.*). More fundamentally, in recognizing that counsel should, absent contract, receive the proceeds of any section 12965 award exceeding fee payments made, we would confer no "exclusive possession of the right to collect attorney's fees" (State Bar Advisory Opn., *supra*, at p. 2) such as might compromise public policy favoring client control over settlement of FEHA cases. We would merely reconcile that policy with those underlying FEHA's attorney fee provision and FEHA generally.[15]

Ultimately, we are not persuaded we can dispose of the question presented solely through consideration of these somewhat competing ethical considerations. Obviously, it is not necessary that we deprive attorneys of FEHA fees in cases where they have in fact been sought and awarded in order to vindicate the principle that a civil rights plaintiff may, in order to effect settlement, agree to waive the right to seek fees. (See State Bar Advisory Opn., *supra*, at p. 3 [recognizing that attorneys may contract for ownership of 42 U.S.C. § 1988 fees].)

The Court of Appeal opined that section 12965 ought not to be construed so that the successful litigant's attorney will own any unassigned fee award, because such a construction would risk prompting attorneys to contract with clients for a percentage of the damages without advising them about the possibility of a statutory fee award, thus undermining the public policy favoring full compensation of victims of unlawful discrimination. We do not believe such a concern need detain us. Plaintiff's own authority implies that

---

[15]We need neither affirm nor reject the State Bar Advisory Opinion on its merits. The specific question treated there—what limits the rules of professional conduct may place on attorneys' freedom to contract with clients regarding ownership of statutory attorney fees—is not before us.

an attorney is not permitted to proceed as the Court of Appeal theorized. (State Bar Advisory Opn., *supra,* at pp. 2-3 [requiring client consent to fair and reasonable terms after full disclosure in writing before an attorney can acquire interest in fee award potentially adverse to client's interest].)

More fundamentally, nothing we say in this opinion concerning ownership of unassigned Government Code section 12965 proceeds alters existing rules forbidding attorneys to charge or obtain unreasonable fees, or diminishes clients' established remedies if unreasonable fees are sought or exacted. (See, e.g., Bus. & Prof. Code, § 6200 et seq. [arbitration of attorney fees].) And, even assuming the Court of Appeal identified a theoretical contracting scenario to some extent not remediable under existing rules, the court did not demonstrate that its proposed resolution has significant *comparative* benefits over existing incentives.[16]

### e. *Encourage written fee agreements*

While they dispute the facts relating to their respective efforts, the parties each claim they took steps to obtain from the other a written agreement respecting attorney compensation in the FEHA litigation. At least to that extent, the Court of Appeal would appear correct in having opined that the "problem in this case arises . . . because counsel failed to secure or retain a written fee agreement." Plaintiff contends our awarding her the disputed proceeds in this case would provide a strong incentive for attorneys to secure written fee agreements in FEHA cases and thus would further public policies generally favoring such agreements. Plaintiff correctly points out, also, that our construing section 12965 in her favor would not diminish defendants' right to enforce any compensation right in quantum meruit. (See, e.g., *Elconin v. Yalen* (1929) 208 Cal. 546, 549 [282 P. 791].)

As the Court of Appeal noted, Business and Professions Code section 6147 requires a written fee agreement in most classes of cases where an attorney agrees to represent a client on a contingency fee basis. Plaintiff argues that for us to require that attorneys secure written fee agreements as

---

[16]This case involves the unusual situation where section 12965 fees have been sought and awarded but no agreement disposing of them may be provable. In most FEHA cases, of course, attorney compensation—including disposition of section 12965 award proceeds—will proceed voluntarily, or be enforced, according to terms agreed on by the parties. There is no indication and neither party suggests the Legislature intended FEHA's attorney fee provision to displace or diminish FEHA plaintiffs' freedom to contract with their attorneys. As we observed in another context, section 12965's "sole aim appears to have been to contravene the general rule in California that, absent contrary agreement, litigants are not entitled to fees." (*Commodore Home Systems, Inc. v. Superior Court, supra,* 32 Cal.3d at p. 216.) In general, "[a]llowing lawyers to contract with their clients for an assignment of the right to fees should enhance the public's access to competent counsel." (State Bar Advisory Opn., *supra,* at p. 3.)

a prerequisite to receiving monies awarded under section 12965 would be reasonable and consistent with the legislative intent underlying Business and Professions Code section 6147. While this argument has some surface appeal, we reject it.

Ordering that section 12965 fee awards be paid directly to plaintiffs whenever there exists no contrary agreement between plaintiffs and their counsel (such that plaintiffs realize a windfall at counsel's expense) could make sense only if the law treated attorneys who fail to secure fee agreements as deserving of such punishment. (See, e.g., *Conservatorship of Chilton* (1970) 8 Cal.App.3d 34, 43 [86 Cal.Rptr. 860] [attorney with conflict of interest not entitled to recover fee for services]; *Hardy v. San Fernando Valley C. of C.* (1950) 99 Cal.App.2d 572, 576 [222 P.2d 314] [same, regarding attorney who was not a member of the State Bar].) But that is not the case. ■ The well-established rule is, to the contrary, that, "[i]n the absence of an agreement upon the subject, [the client] must be deemed to have promised to pay [the attorney] the reasonable value of the services performed in his behalf and with his consent and knowledge." (*Batcheller v. Whittier* (1909) 12 Cal.App. 262, 266-267 [107 P. 141]; see also *Elconin v. Yalen, supra*, 208 Cal. at p. 549; 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 220, pp. 280-281.)

Even in circumstances where the Legislature has required a written fee agreement (e.g., Bus. & Prof. Code, §§ 6147 [contingency fee agreements], 6148 [other agreements for fees exceeding $1,000]), it has provided that, while noncompliance renders the agreement voidable, the attorney nevertheless is "entitled to collect a reasonable fee" (*id.*, §§ 6147, subd. (b), 6148, subd. (c)). To that extent, the Legislature expressly has declined to sanction failure to obtain a written agreement as plaintiff proposes.

Plaintiff's categorical assertion that an attorney can always obtain protection by complying with the Rules of Professional Conduct is—as a matter of logic—false in every noncontingency fee case where to obtain a writing is "impractical" (Bus. & Prof. Code, § 6148, subd. (d)(1)), as the requirement of obtaining a written agreement expressly does not apply in such cases. More broadly, because written fee agreements are not always required, our construing section 12965 as plaintiff requests would risk punishing lawyers who do not violate the Business and Professions Code, as well as those who do. Written fee agreements are not required for noncontingency fee representation when the client is a corporation (as will often be the case, presumably, with nonprofit and public interest groups), when the client for whatever reason is not obligated to pay anything, when an agreement can be implied from counsel's prior representation of the client, in an emergency situation

when the attorney must act to avoid prejudice to the client, or, as noted, where a writing is otherwise impractical. (Bus. & Prof. Code, § 6148, subd. (d).)[17]

 For the foregoing reasons, we conclude that attorney fees awarded pursuant to section 12965 (exceeding fees already paid) belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them. The preceding analysis, of course, may not be dispositive—indeed, will not even come into play—where the parties have made an enforceable agreement disposing of an award's proceeds. Whether an enforceable agreement exists, or what its terms may be in any given case, are of course questions of fact.

The Court of Appeal, in holding (incorrectly, as we have explained) that a section 12965 award invariably belongs to the party rather than counsel in the first instance, remanded for further proceedings on the question of fact whether an agreement between Flannery and her counsel created in defendants an entitlement to the disputed proceeds. While, as explained, we disagree with the Court of Appeal's legal analysis regarding ownership of unassigned section 12965 proceeds, we agree summary judgment is not appropriate on this record, which contains conflicting evidence as to whether a controlling agreement exists or what the terms of any such may be. Accordingly, we affirm the judgment of the Court of Appeal.

B. *Venue for resolution of fee award ownership disputes*

Defendants asked in their petition for review that we announce in this case a rule requiring that all litigated disputes between attorneys and their clients over statutory fee awards be resolved by the trial judge who handled proceedings in the matter to which the fees relate. They ask us to bar "collateral" proceedings like the instant suit. Defendants, however, did not

---

[17]In many civil rights cases particularly, written fee agreements may be neither required nor effective. In a class action, for example, written fee agreements with the entire class may not be feasible and any fee agreement class attorneys have with named plaintiffs does not bind other class members or the court. (*Long Beach City Employees Assn., Inc. v. City of Long Beach* (1981) 120 Cal.App.3d 950, 959 [172 Cal.Rptr. 277].) The realities of pro bono litigation often involve attorneys from several firms or pro bono organizations banding together to work on cases that otherwise would go begging. Such cases may be brought on an emergency basis or involve relatively small damages. Indeed, injunctive relief may be the primary goal of such litigation. A retainer agreement that covers all such counsel or circumstances may not be practical or feasible in light of time and resource constraints. (See *Evans, supra*, 475 U.S. at p. 721 [106 S.Ct. at p. 1534] ["the special character of both the class [of handicapped children] and its attorney-client relationship [with an Idaho Legal Aid Society attorney] explains why it did not enter into any agreement covering the various contingencies that might arise during the course of settlement negotiations"].)

raise this issue in the Court of Appeal. As a matter of policy, on petition for review, we normally do not consider any issue that could have been but was not timely raised in the briefs filed in the Court of Appeal. (Cal. Rules of Court, rule 29(b)(1).) Citing *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654 [209 Cal.Rptr. 682, 693 P.2d 261], defendants suggest that our considering their additional issue notwithstanding our normal policy would not prejudice plaintiff, and that we should, therefore, address it as one involving "an important question of law implicating the jurisdiction of the courts."

Defendants obtained summary judgment in the trial court, both as defendants and as cross-complainants. ■ "A judgment rendered with consent of the appellant is not appealable." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 189, p. 244.) It was plaintiff, of course, who appealed the trial court's summary judgment rulings with the result that led to defendants' petitioning us for review. Nevertheless, it ill behooves defendants to disparage the trial court's competence to hear the merits of the instant suit, inasmuch as defendants themselves sought affirmative relief—a declaration of their entitlement to the disputed fees—in the trial court. ■ "There is substantial authority for the proposition that a party who has invoked or consented to the exercise of jurisdiction beyond the court's authority may be precluded from challenging it afterward, even on a direct attack by appeal." (2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 324, p. 900, citing numerous authorities.)

Defendants do not persuade us that we should depart from our ordinary policy in this case. Ultimately, we cannot conclude that defendants' novel proposal regarding fee dispute resolution raises "extremely significant issues of public policy and public interest" (*Fisher v. City of Berkeley, supra*, 37 Cal.3d at p. 655, fn. 3) such as may have caused us on infrequent prior occasions to depart from it.

### DISPOSITION

For the foregoing reasons, we affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.,** Dissenting.—In clear and unequivocal language, Government Code section 12965, subdivision (b) authorizes courts to award reasonable attorney fees "to the prevailing party" in civil rights actions brought under the Fair Employment and Housing Act.[1] According to the majority, however, the statute does not mean what it says: "prevailing party" does not

---

[1]Further undesignated statutory references are to the Government Code.

mean prevailing *party* but prevailing *lawyer*. That construction ignores the plain language of the statute as well as persuasive United States Supreme Court precedent construing virtually identical language in the federal civil rights law. Therefore, I dissent.

## I.

I begin with a brief discussion of the circumstances leading to the California Legislature's enactment of the attorney fee provision at issue here.

"In the United States, the prevailing litigant is ordinarily *not* entitled to collect a reasonable attorneys' fee from the loser." (*Alyeska Pipeline Service Co. v. Wilderness Society* (1975) 421 U.S. 240, 247 [95 S.Ct. 1612, 1616, 44 L.Ed.2d 141] (*Alyeska Pipeline*), italics added.) This is known as the "American Rule," to distinguish it from the practice in England where "for centuries . . . there has been statutory authorization to award costs, including attorneys' fees" to the party who prevails in a lawsuit. (*Ibid.*; see Code Civ. Proc., § 1021; 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 145, p. 659 [describing Code Civ. Proc., § 1021 as "the California version of the 'American rule' under which each party must pay *its* own legal fees"].)

In 1975, the United States Supreme Court reaffirmed the American Rule when it decided *Alyeska Pipeline*. At issue there was a federal appeals court order requiring the Alyeska Pipeline Company to pay the attorney fees incurred by environmental groups who had successfully challenged the Department of Interior's issuance of permits to Alyeska for construction of the trans-Alaska oil pipeline. No federal statute authorized fee shifting to the losing party in such cases. Nevertheless, the appellate court considered the award of attorney fees to be within its equitable powers as necessary to encourage private litigants to bring public interest suits as private attorneys general. (*Alyeska Pipeline, supra,* 421 U.S. at pp. 241-246 [95 S.Ct. at pp. 1613-1616].) The high court disagreed. It noted that although Congress had statutorily authorized attorney fees *in some instances* to encourage private litigation as a means of implementing public policy, "congressional utilization of the private-attorney-general concept can in no sense be construed as a grant of authority to the Judiciary to jettison the traditional rule against nonstatutory allowances to the prevailing party and to award attorneys' fees whenever the courts deem the public policy . . . important enough to warrant the [fee] award." (*Id.* at p. 263 [95 S.Ct. at pp. 1624-1625].)

In the wake of *Alyeska Pipeline, supra,* 421 U.S. 240, Congress in 1976 amended 42 United States Code section 1988 (title 42, section 1988) by

expressly authorizing courts in civil rights actions, in their discretion, to award "the prevailing party . . . a reasonable attorney's fee." The next year, California's Legislature enacted a similar statute, Code of Civil Procedure section 1021.5, which provides that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." Both the federal and the California statutes were legislative responses to the high court's decision in *Alyeska Pipeline. (Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 680, fn. 20 [186 Cal.Rptr. 589, 652 P.2d 437].) Both authorize courts to award attorney fees in certain situations.

In 1980, the California Legislature enacted the attorney fee provision at issue here. (§ 12965, subd. (b).) Like the federal attorney fee statute, it applies to civil rights actions—those that are brought under the Fair Employment and Housing Act (FEHA) and assert employment or housing discrimination. (See § 12900 et seq.) In relevant part, the FEHA fee statute provides: "[T]he court, in its discretion, may award to the *prevailing party* reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity." (§ 12965, subd. (b), italics added.) At issue here is the meaning of the phrase "prevailing party."

## II.

### A.

In interpreting the FEHA attorney fee provision in subdivision (b) of section 12965, courts must, as with any statute, follow settled principles of statutory construction. *(Summers v. Newman* (1999) 20 Cal.4th 1021, 1026 [86 Cal.Rptr.2d 303, 978 P.2d 1225].) "The aim of statutory construction is to discern and give effect to the legislative intent. *(Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) The first step is to examine the statute's words because they are generally the most reliable indicator of legislative intent. *(Holloway v. United States* (1999) 526 U.S. 1, [6] [119 S.Ct. 966, 969, 143 L.Ed.2d 1]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) To resolve ambiguities, courts may employ a variety of extrinsic construction aids, including legislative history, and will adopt the construction that best harmonizes the statute both internally and with related statutes. *(Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291]; *Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].)" *(Ibid.)*

Subdivision (b) of section 12965 states that a court may award "reasonable attorney's fees and costs, including expert witness fees" to the "prevailing party." The statutory language could not be clearer: An award of attorney fees by the trial court is to the "prevailing party," not the latter's lawyer. In those instances where the Legislature intended an award of attorney fees to go directly to a lawyer for a party, it has expressly said so. (See § 13969.1, subd. (d)(1) ["the court may order the board to pay *to the applicant's attorney* reasonable attorney's fees" (italics added)]; Fam. Code, § 272, subd. (a) [making "fees and costs . . . payable in whole or part *to the attorney*" (italics added)]; Lab. Code, former § 3371, added by Stats. 1976, ch. 1347, § 6, p. 6139 and repealed by Stats. 1994, ch. 497, § 4, p. 2689 ["*The attorney . . . shall be awarded* a reasonable fee" (italics added)].) The wording in these statutes and the one at issue here show that the Legislature knows how to use language that clearly expresses its intent in the attorney fee area. (See *People v. Murphy* (2001) 25 Cal.4th 136, 159 [105 Cal.Rptr.2d 387, 19 P.3d 1129]; *City of Port Hueneme v. City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318] [" 'Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different [legislative] intention existed.' "].)

One more point: Statutes providing for the payment of fees to a party's *lawyer* are an exception to California's general rule for statutory attorney fees. Such fees are considered an element of costs (7 Witkin, Cal. Procedure, *supra*, Judgment, § 146, p. 661), and costs are payable *directly to a prevailing party* (Code Civ. Proc., § 1032, subd. (b)). Accordingly, this court has invalidated statutory awards of attorney fees when ordered paid directly to a party's *lawyer*. (See *Stevens v. Stevens* (1932) 215 Cal. 702, 704 [12 P.2d 432] ["The attorneys were not parties to the action and any award of counsel fees should have been made to the parties litigant"]; see also *Keck v. Keck* (1933) 219 Cal. 316, 322 [26 P.2d 300]; *Henry v. Superior Court* (1892) 93 Cal. 569, 570 [29 P. 230].)

### B.

My construction of section 12965, subdivision (b) also comports with the United States Supreme Court's construction of title 42, section 1988, which is the federal civil rights fee statute and, just like the state statute at issue here, authorizes a court's discretionary award of attorney fees to the "prevailing party." (See *Evans v. Jeff D.* (1986) 475 U.S. 717, 730 [106 S.Ct. 1531, 1539, 89 L.Ed.2d 747] (*Jeff D.*).)

In *Jeff D.*, the issue was whether, in a civil rights case brought as a class action, the representative plaintiff could *waive* entitlement to title 42, section

1988 attorney fees in order to secure from the defendant a favorable settlement agreement. The high court upheld such a waiver, noting that under the plain language of the statute the entitlement to attorney fees belonged not to the lawyer but to the prevailing party: "Congress bestowed on the 'prevailing *party*' (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees in specified civil rights actions. It did not prevent the party from waiving this eligibility any more than it legislated against assignment of this right to an attorney . . . ." (*Jeff D.*, *supra*, 475 U.S. at pp. 730-731 [106 S.Ct. at p. 1539], fns. omitted.) Although shifting the cost of plaintiffs' attorney fees to defendants was intended "to attract competent counsel to represent citizens deprived of their civil rights," the high court stressed that Congress had *not* "bestowed fee awards upon *attorneys*" but rather included entitlement to counsel fees among "the arsenal of remedies available to combat violations of civil rights, a goal not invariably inconsistent with conditioning settlement on the merits on a waiver of statutory attorney's fees." (*Id.* at pp. 731-732 [106 S.Ct. at p. 1540], italics added, fns. omitted.) The court added that its construction of title 42, section 1988 as vesting the right to attorney fees in the "prevailing party" rather than in that party's lawyer was consistent with the decisions of most federal appellate courts that had considered the issue. (*Jeff D.*, at p. 732, fn. 19 [106 S.Ct. at p. 1539]; see *Jonas v. Stack* (11th Cir. 1985) 758 F.2d 567, 570, fn. 7; *Brown v. General Motors Corp.* (2d Cir. 1983) 722 F.2d 1009, 1011 ["Under [42 U.S.C. § 1988] it is the prevailing party rather than the lawyer who is entitled to the attorney's fees"]; *White v. New Hampshire Dept. of Employment Security* (1st Cir. 1980) 629 F.2d 697, 703 ["award of attorney's fees goes to 'prevailing party,' rather than attorney"].)

Four years later, the high court reiterated that holding when it concluded in *Venegas v. Mitchell* (1990) 495 U.S. 82 [110 S.Ct. 1679, 109 L.Ed.2d 74] (*Venegas*) that title 42, section 1988 did not preclude civil rights plaintiffs from entering into contingency fee contracts with their lawyers: "[J]ust as we have recognized that it is the *party's* entitlement to receive the fees in the appropriate case, so have we recognized that as far as § 1988 is concerned, it is the *party's* right to waive, settle, or negotiate that eligibility." (*Venegas*, *supra*, at p. 88 [110 S.Ct. at p. 1683], italics added.) Parenthetically, here there was no written fee agreement between the FEHA plaintiff and her counsel, and she objected to the trial court's award of attorney fees directly to counsel.

As I noted earlier, just four years after Congress added the attorney fee provision to the federal civil rights law, the California Legislature adopted virtually identical language in its enactment of section 12965, subdivision (b), the attorney fee provision in FEHA, California's civil rights law. In

construing the term "prevailing party" in the federal statute as indeed meaning prevailing *party* and not the prevailing *lawyer*, the high court's decisions in *Jeff D.*, *supra*, 475 U.S. 717, and in *Venegas*, *supra*, 495 U.S. 82, provide strong support for my similar conclusion here with respect to section 12965, subdivision (b).

### III.

In reaching a contrary conclusion, the majority feebly attempts to distinguish the United States Supreme Court's decisions in *Venegas*, *supra*, 495 U.S. at page 88 [110 S.Ct. at page 1683], and in *Jeff D.*, *supra*, 475 U.S. at page 730 [106 S.Ct. at pages 1538-1539], by asserting that " '[n]either case, however, expressly considered the narrow question we face: whether a party may receive or keep the proceeds of a fee award when she has neither agreed to pay her attorneys nor obtained from them a waiver of payment.' " (Maj. opn., *ante*, at pp. 580-581.) The majority is wrong. In *Jeff D.*, there was "no agreement requiring any of the [plaintiffs] to pay for the costs of litigation or the legal services . . . provided." (*Jeff D.*, *supra*, at p. 721 [106 S.Ct. at p. 1534].) And the issue there was whether a plaintiff could, as part of a settlement agreement, waive entitlement to attorney fees. (*Id.* at p. 730 [106 S.Ct. at pp. 1538-1539].) With respect to *Venegas*, there the high court simply reaffirmed its holding in *Jeff D.* The distinction the majority tries to draw between a party's right to receive and keep a fee award and a party's right to forgo a fee award is one without any material difference.

In yet another futile attempt to support its holding, the majority points to this court's decision in *Levy v. Superior Court* (1995) 10 Cal.4th 578, 583 [41 Cal.Rptr.2d 878, 896 P.2d 171], for the proposition that the term "party" in procedural statutes can mean "not only the actual litigant, but also the litigant's attorney of record." (See maj. opn., *ante*, at p. 578 [citing *Levy* for its conclusion that the word "party" is ambiguous].) But the majority conveniently ignores *Levy*'s further discussion of that point. *Levy* noted that the statutes in which the term "party" can include the party's counsel of record are those involving motions "routinely made by attorneys in the course of representing their clients." (*Levy*, *supra*, at p. 583.) By contrast, the fee provision here does not involve an attorney's appearance on a routine motion on behalf of a client; instead, it sets forth to whom the trial court is to award attorney fees: "to the prevailing party." The provision thus falls within that category of statutes that *Levy* described as affecting "the substantial rights of the litigants themselves," in which "the term 'party' literally means the party litigant, not the litigant's attorney." (*Ibid.*)

According to the majority, its holding is necessary to ensure "that attorneys who undertake FEHA cases will be fully compensated." (Maj. opn.,

*ante*, at p. 583.) Again, I disagree. Lawyers are free to enter into contracts with their clients for the payment of attorney fees, as long as they do so in a manner consistent with their ethical obligations to serve their clients' interests over their own. (See Rules Prof. Conduct, rule 3-300 [setting conditions for lawyers acquiring pecuniary interests adverse to a client].) The fee dispute between the lawyers and the client in this case resulted from the lawyers' failure to obtain a *written* contract regarding the payment of their fees. To give effect to the plain language in section 12965, subdivision (b) that a trial court's award of attorney fees is made to the prevailing *party*, not the prevailing *lawyer*, does not leave the lawyer without protection against a client who retains the fee award and does not pay the lawyer. Attorney fee contracts between lawyer and client can include a provision creating a lien in favor of the lawyer against the plaintiff's anticipated recovery in the case, including the statutory attorney fees. (See *Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657].)